(No. 27321.—

JAMES F. DONN, doing business as South Shore Finance Co., Appellee, *vs.* AUTO DEALERS INVESTMENT COMPANY.—(NABCO LIQUIDATING COMPANY, Appellant.)

*Opinion filed January 18, 1944.*

HOPKINS, SUTTER, HALLS & DEWOLFE, (DONALD J. DEWOLFE, and NOLAN H. TEPPER, of counsel,) all of Chicago, for appellant.

GREEN, SHAPIRO, HATOWSKI & GREEN, (HAROLD J. GREEN, and JULES R. GREEN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on leave to appeal granted to review the judgment of the Appellate Court for the First District, reversing the judgment of the circuit court of Cook county in an action brought by appellee against appellant for the recovery of certain monies arising out of the sale of automobiles under what is known as the Trust Receipts Act, approved July 10, 1935. (Laws of 1935, p. 1315; Ill. Rev. Stat. 1941, chap. 121½, p. 2843.) The facts out of which the case arises are not in dispute. Both the plaintiff, Donn, and the defendant, Auto Dealers Investment Company, a corporation, for which the Nabco Liquidating Company, a corporation, was substituted on review, filed statements with the Secretary of State under section 13 of the Trust Receipts Act, setting out that the plaintiff in one instance and the defendant in the other expected to engage in financing the handling of automobiles by one Walter as trustee, as provided by the statute. Both these statements were signed by Walter as trustee. One was signed by plaintiff as entruster and the other by defendant Auto Dealers Investment Company as entruster. The former was filed on May 25, 1939; the latter on August 16, 1939. After the later date both the plaintiff and defendant were engaged in trust receipt transactions with Walter involving the handling of automobiles by the latter. Both advanced money to Walter on the same automobiles after August 16. There is no evidence that either knew that the other was advancing money to Walter on the same automobiles.

The record shows that defendant was the first to make advancements to Walter on these cars and take trust receipts therefor. The plaintiff subsequently made advancements to Walter on the same automobiles and obtained trust receipts for them. In each instance the plaintiff's advancements were made subsequent to those made by the defendant on the same automobiles.

Walter defaulted in payments to defendant and it took possession of the automobiles. Thereupon plaintiff notified defendant of his claim to the same automobiles, which claim the defendant denied. Defendant sold the automobiles at public sale and applied the proceeds on its debt due from Walter, amounting to $2240. It is conceded that none of this was paid to the plaintiff, who brought this suit claiming the priority of his trust receipts, based on the fact that he and Walter had filed with the Secretary of State a statement of intention to do trust receipt business prior to the time that defendant and Walter had filed a like statement with the Secretary of State. Neither the plaintiff nor defendant, at the time either statement was filed with the Secretary of State, had advanced money to Walter on the automobiles in controversy. The circuit court on hearing rendered judgment for the defendant. The Appellate Court reversed that judgment and entered judgment for plaintiff.

Plaintiff's contention is that since, at the time he filed with the Secretary of State, under section 13 of the act, a statement of intention to do a trust receipt business, dealing in automobiles with Walter, the defendant's statement of like character had not been filed, plaintiff, under the act, acquired an inchoate security or an inchoate lien for one year on any automobile Walter should acquire, which inchoate lien was perfected when the automobiles became the subject matter of a trust receipt transaction between him and Walter within that year, and that such statement, when filed, constituted constructive notice to the defendant and to all subsequent entrusters of plaintiff's right to perfect his inchoate security interest or inchoate lien by advancing money on any automobiles which Walter acquired within one year from the date of filing, as provided by the statute.

Defendant, on the other hand, contends that since both had filed statements of intention to do a trust receipt busi-

ness with Walter, the date which determines the priority of the security or lien for money advanced to Walter is, as between plaintiff and defendant, the date when such credit was extended, as shown by the trust receipt. It is therefore seen that the issue here, arising under this most complicated statute, is one of priorities as between entrusters. This is the only question involved in the case. The rights of an entruster as against other creditors not entrusters, are in nowise involved and are not considered.

The Trust Receipts Act is evidently the result of an effort to meet the needs of the business of financing the purchase and sale of goods on credit without the use of chattel mortgages, and without recording each lien transaction. The apparent purpose in permitting the filing of a statement by such financier and dealer is to have some method of giving notice to other prospective creditors that the former are doing business by the trust receipt financing method. The purpose seems to have been to retain the advantages of a security interest in goods by use of the trust receipt and yet to eliminate, as far as possible, both secret liens and the necessity of recording each transaction.

Section 13 of the act provides that when a financier contemplates trust receipt transactions with reference to goods, he may file with the Secretary of State a statement signed by himself as entruster and the dealer as trustee, giving the chief place of business of each, and stating that the entruster is engaged or expects to be engaged in financing under trust receipts the acquisition of goods by the trustee, describing such goods in general terms. The life of such statement is one year from the date of filing. At any time within that year a like statement or affidavit may be filed by the entruster alone, which makes such statement valid for another year and preserves such liens as he may have.

There is nothing in the act which prevents more than one entruster filing a statement signed by himself and the

same trustee, and it is conceded by counsel for plaintiff in this case that defendant and Walter properly filed their statement with the Secretary of State, so that the pivotal question in this case concerns the right of these two entrusters to prior security liens in the automobiles acquired by Walter upon which both entrusters had advanced money to him. In order words, whose rights are superior in the automobiles in controversy? Determination of this question requires construction of various parts of the statute. The first question is whether an entruster by merely filing a statement with the Secretary of State, secures a prior lien on automobiles for which he has not yet made advancements, or does such lien, so far as another entruster is concerned, arise out of trust receipt transactions when actually entered into and trust receipts taken?

Section 1 of the act defines an entruster as one who "takes a security interest in goods, documents or instruments under a trust receipt transaction." Paragraph 4 of section 13 declares what shall constitute the filing of the statement described in the act, and declares that presentation for filing constitutes filing under the act in favor of such entruster to the goods falling within the description given in the statement "which are within one year from the date of such filing, or have been, within thirty days previous to such filing, the subject matter of a trust receipt transaction between the entruster and the trustee." It will be observed that no lien is provided by this section. It provides for the filing of notice of an intention to transact business. It defines what goods may become the subject of a lien by such trust receipt transaction.

Where two entrusters' statements are filed, the benefit of the statute is afforded to both. Counsel concede this to be true but plaintiff's counsel argue that as between the two entrusters, where the one who first filed his statement has advanced money to a trustee without actual knowledge that another entruster later filing had also advanced money

to the same trustee, his security lien is prior. They argue that because of the prior filing the appellant had an inchoate security interest in all of Walter's automobiles for one year, and that the defendant, as well as the rest of the world, had constructive notice of such inchoate interest and that unless and until plaintiff received "actual personal notice that the defendant was also an entruster," appellee had a right to deal on the assumption that he was the only entruster. Counsel do not point to any provisions of the statute so providing and we find none. We find nothing in the act warranting the conclusion that the General Assembly intended that there be such discrimination between entrusters. Nor is there any warrant for saying that the first entruster is not given like constructive notice by the filing of a second entruster's statement with the Secretary of State.

Section 2 of the act defines a trust receipt transaction as follows: "A trust receipt transaction within the meaning of this Act is any transaction to which an entruster and a trustee are parties for one of the purposes set forth in subsection three of this section." Subsection 3 of section 2 provides: "A transaction shall not be deemed a trust receipt transaction unless the possession of the trustee thereunder is for a purpose substantially equivalent to any one of the following:" (Here follows three paragraphs delineating the uses for which the trustee may hold the goods.)

Security interest is defined by subsection 12 of section 1 of the act as "a property interest in goods, documents or instruments, limited in extent to securing performance of some obligation of the trustee or of some third person to the entruster." A trustee is defined as the person having possession of goods "under a trust receipt transaction." By section 3 it is declared that an attempted pledge or agreement to pledge, not accompanied by delivery of possession, "which does not fulfill the requirements of a trust

receipt transaction," shall be valid as against creditors of the pledgor only under the circumstances delineated in following paragraphs of that section.

These provisions of the act indicate that the thing which vests in the entruster a security interest in the goods acquired by the trustee is the trust receipt transaction and not the filing of the statement with the Secretary of State. The filing of such statement serves to put all contemplated creditors on notice and defendant, when he filed his statement, had constructive notice of plaintiff's filing and was put on inquiry to learn from the trustee whether plaintiff held security interest in the goods sought to be so pledged to him. Plaintiff, by the same token, had constructive notice of defendant's statement when and after it was filed and thereafter was likewise put on inquiry to learn from the trustee whether defendant had advanced funds and received trust receipts on the specific goods offered to him, the plaintiff, for a trust receipt transaction.

Plaintiff argues earnestly, however, that section 7 gives him the claimed right in the automobiles of Walter as of the date of his filing with the Secretary of State and not on the dates on which he actually advanced the money. This section provides, in paragraph (a) of subsection 1, that if the entruster within the period of thirty days, specified in subsection 1 of section 8, "files as in this Act provided, such filing shall be effective to preserve his security interest in documents for goods against all persons, save as otherwise provided." Paragraph (b) provides that filing after the lapse of said period of thirty days shall be valid except as otherwise provided in the act. Subsection 1 of section 8, referred to in section 7, provides that "the entruster's security interest in goods, documents or instruments under the written terms of a trust receipt transaction, shall without any filing be valid against all creditors of the trustee, with or without notice, for thirty days after delivery of the goods, documents or instruments to the trus-

tee, and thereafter except as in this Act otherwise provided. But where the trustee at the time of the trust receipt transaction has and retains goods, documents or instruments, the thirty days shall be reckoned, in the case of goods or documents from the time the entruster gives new value under the transaction and in the case of instruments from the time such instruments are actually shown to the entruster," etc.

These sections, read together, indicate that in cases where a trust receipt transaction has taken place within thirty days prior to filing a statement with the Secretary of State such filing shall be effective to preserve the entruster's security interest. The entruster's security interest is not thereby created, but is preserved, indicating a prior transaction out of which the security interest arose. Subsection 1 of section 8, as we have seen, refers to the entruster's security interest "under the written terms of a trust receipt transaction." We are unable to see wherein section 7 in any way aids appellee's contention that it is the filing and not the trust receipt transaction which creates the lien, so far as the rights of other entrusters are concerned. Nor is the filing of the statement to be likened to a mechanic's lien which arises out of contract. The entruster, by filing the statement, does not contract to do anything. He may, after such filing, decline to advance funds on any goods. What security he takes is determined by the trust receipt and at the time it is given.

The plaintiff argues that the statement permitted by the act to be filed is similar to a mortgage to secure future advances. We are not impressed with the analogy. The definitions of an entruster and trust receipt transactions do not contemplate anything in the nature of such a chattel mortgage. Section 14 specifically provides that the obligation secured under a trust receipt transaction is not to be extended to a subsequent obligation of the trustee. As we view this statute it contemplates a new trust receipt

transaction to be entered into whenever any funds are advanced by the entruster covering the described chattel. Mortgages for future advances usually arise out of a contract to make such advances. Here the entruster, as we have seen, by filing a statement with the Secretary of State, does not contract to do anything. When a financier, whom we will designate the second entruster, files a statement with the Secretary of State after a like statement has been filed by his trustee with another entruster, the second entruster has constructive notice of intention given by such first filed statement. He is put on inquiry to learn whether the entruster first filing has advanced money and received a trust receipt on the goods presented to him for such purpose. If he makes such inquiry and finds that no such funds have been advanced by the first entruster and he then advances funds and takes a trust receipt, it would be contrary to legislative intent, as we construe the act, to hold that his trust receipt is a junior lien to that of the entruster who first filed his statement but who had advanced no funds to that trustee on the same goods until after the second entruster advanced funds and took a trust receipt thereon. It is immaterial whether the entruster first filing actually knew, when he advanced funds to a mutual trustee and took a trust receipt on certain goods, that the second entruster had previously advanced funds on the same goods and taken a trust receipt therefor. As between entrusters he was put on inquiry by the statement of intention filed by the second entruster. The purpose of constructive notice is to put one on inquiry. An entruster first filing receives constructive notice by a statement filed by a second entruster made with the same trustee. It is as much the duty of one entruster to inquire as it is of the other.

In this case, if the defendant had made inquiry, it would have learned that Walter had issued no trust receipts to the plaintiff on any of the automobiles tendered to the defendant for trust receipt transactions. This is all

defendant could be expected to do. On the other hand, if plaintiff had inquired before advancing funds, he would have found that Walter had issued trust receipts to the defendant on those automobiles. It is inconceivable that, as between two entrusters, the General Assembly intended that the second entruster's rights should be subordinate to those of the first as to transactions in which the second entruster had been the first to advance funds and take the trust receipt.

We are not impressed with the argument that such a construction of the act prevents a normal flow of business between plaintiff and his trustee. No harm can result to either entruster, since taking a statement of the trustee as to advances on the same goods by other entrusters, prior to entering into any trust receipt transaction, involves little or no effort and no delay. The statutes of this State cover situations where false statements are made to secure credit. We are of the opinion there is nothing in the act which indicates a legislative intent that so great a discrimination between the rights of entrusters should exist as plaintiff claims. We think the purpose of the act is better met by so construing it as to encourage its wider use than by limiting the security provided to the one entruster who first gets his statement on file. Such a construction would result in a monopoly for such entruster on the business of a trustee, since no one would enter into that relationship with him who finds on file with the Secretary of State his statement with another entruster. Under the act an entruster, during the year his statement is alive, may, alone, file another statement with the Secretary of State, thus perpetuating the relationship without the consent of the trustee.

We are of the opinion therefore that as between these two entrusters, where all the trust receipt transactions involved occurred after both had filed a statement, the defendant, who first advanced funds and took a trust receipt,

took priority over the claim of the plaintiff, who later advanced money to the same trustee on the same property, and this regardless of which first filed his statement with the Secretary of State. It follows that the Appellate Court erred in reversing the judgment of the circuit court. The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Judgment of Appellate Court reversed;*
*judgment of circuit court affirmed.*