Commercial Credit Corporation, Appellee, v. Albert J.
Horan, Bailiff of Municipal Court of Chicago
et al.
On Appeal of Emma Hammond and Minerva Edmett,
Appellants.

Gen. No. 43,291.

Heard in the second division of this court for the first district at the December term, 1944. Opinion filed April 19, 1945. Released for publication May 2, 1945.

PAUL G. SULLINS, of Chicago, for certain appellants.

HASSENAUER, MCKEOWN & TRUSSELL, of Chicago, for appellee; EDWARD P. MCKEOWN and J. EDWARD JONES, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is a trial of right of property proceeding. Emma Hammond and Minerva Edmett procured a judgment for $423.47 against Samuel Leibold. They caused an execution to issue based on said judgment on May 10, 1944 and delivered it to the bailiff of the municipal court of Chicago who through one of his deputies made a levy on the Packard automobile involved herein. Plaintiff, Commercial Credit Corporation, instituted this action against Emma Hammond, Minerva Edmett and the bailiff of the municipal court of Chicago, as defendants, claiming ownership and possession of said automobile by reason of a Trust Receipt Financing transaction between it and Pearson Motor Sales, on April 8, 1944, as a result of which it became vested with a security interest in the Packard automobile (hereinafter for convenience referred to as Packard or automobile or car), which constituted a prior lien on same. The case was tried by the court without a jury and finding and judgment were entered in favor of plaintiff. Defendants Emma Hammond and Minerva Edmett appeal.

The Uniform Trust Receipts Act (pars. 166–187, ch. 121½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 135.17 (1)–135.17(22)]) went into effect in this state in July 1935. Section 2, par. 167 of said Act, in so far as it is applicable to the situation presented here, provides as follows:

"*What constitutes trust receipt transaction and trust receipt.* (1) A trust receipt transaction within the meaning of this Act is any transaction to which an entruster and a trustee are parties for one of the purposes set forth in subsection three of this section, whereby . . . (c) the entruster gives new value in reliance upon the transfer by the trustee to such entruster of a security interest in goods . . . in possession of the trustee and the possession of which is retained by the trustee; provided that . . . the giving of new value . . .

"(I) Be against the signing and delivery by the trustee of a writing designating the goods . . . concerned, and reciting that a security interest therein . . . has passed to or will pass to, the entruster . . .

"(II) (2) A writing such as is described in subsection one, paragraph (I), of this section signed by the trustee, and given in or pursuant to such a transaction, is designated in this Act as a 'trust receipt'. No further formality of execution or authentication shall be necessary to the validity of a trust receipt.

"(3) A transaction shall not be deemed a trust receipt transaction unless the possession of the trustee thereunder is for a purpose substantially equivalent to any one of the following:

"(a) In the case of goods . . . for the purpose of selling or exchanging them, or of procuring their sale or exchange. . . . "

■ Under the terms of the Act where the trustee (borrower) has in his possession goods which are the subject matter of the trust receipt transaction and retains same in his possession, the security interest or lien of the entruster (lender) attaches to such goods when the trust receipt is executed and the loan is received by the trustee and is valid for 30 days thereafter without notice or filing of any kind. If within said 30 days a Statement of Trust Receipt Financing is filed with the secretary of state by the entruster "such filing shall be effective to preserve his security interest in . . . [the] goods against all persons," with certain exceptions, none of which is applicable here. (Pars. 172 and 173, ch. 121½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 135.17(7), 135.17(8)].)

■ The principal purpose of the Act was to facilitate the financing of sales and other transactions and to afford the "lender every conceivable protection in handling trust receipt and pledge transactions, so that the use of these security devices may be in-

creased.'' (Professor Bogart, December 1935 issue of the University of Chicago Law Review, Vol. 3 (1), p. 38.) While the Act was intended to afford protection to the entruster principally against other creditors of the trustee, the security interest of the entruster is also protected thereunder as against any person, other than a creditor of the trustee, who claims title to or an interest in the goods which are the subject matter of the trust receipt transaction. Here no other creditor of the trustee is claiming any right in or to the Packard but the defendants herein, judgment creditors of Samuel Leibold, claiming that the car was in the possession of the latter when the levy was made upon it, challenge the validity of plaintiff's trust receipt transaction with Pearson Motor Sales (hereinafter referred to as Pearson).

To sustain the validity of its trust receipt transaction with Pearson and of its security interest in the automobile at the time it was levied upon by the bailiff to satisfy defendants' judgment against Leibold, plaintiff presented in evidence six documentary exhibits. The first exhibit consisted of two bills of sale executed by Pearson on April 7, 1944 which cover eleven automobiles, including the Packard, and show the total sale price of said cars as $6,920, the Packard being listed at $700. The bills of sale warranted that Pearson was the absolute owner of the eleven cars and purported to transfer the title of them to plaintiff free and clear of encumbrances. The second exhibit consisted of two trust receipts from Pearson to plaintiff covering the same eleven cars described in the bills of sale. Pearson executed the trust receipts on April 8, 1944 and agreed therein among other things that as trustee he would hold the automobiles in trust for the entruster; that he would deliver them to the entruster on demand; that his possession as trustee was for the purpose of selling the automobiles at retail in the usual course of business; that he would not

encumber them; that he would not sell them at less than the minimum sale price at which each car was listed in the trust receipt, which as to the Packard was $700; and that he would immediately after the sale of each car deliver to the entruster from the proceeds of such sale the said minimum price. The third exhibit is a Statement of Trust Receipt Financing executed by plaintiff and Pearson on April 8, 1944 and filed in the office of the secretary of state on April 18, 1944. The fourth exhibit is a draft drawn by Pearson on April 8, 1944 on plaintiff for $6,920 payable to Pearson Motor Sales, 2252 No. Cicero avenue. The amount of this draft was paid to Pearson. The fifth exhibit was plaintiff's notes receivable record showing that Pearson had not paid his indebtedness on the Packard car.

From the evidence thus far related there can be no question but that as to the Packard plaintiff and Pearson entered into a valid trust receipt financing transaction within the requirements of the Trust Receipts Act, if Pearson owned and had title to said car at the time of such transaction. In order to establish Pearson's title to and ownership of the car at the time he executed and delivered his trust receipt covering same, plaintiff introduced in evidence as its exhibit 6 the original certificate of title issued on this car by the secretary of state on February 5, 1940 to one Carl O. Rinder. On the form of Assignment of Title on the reverse side of Rinder's certificate of title, his signature appears as assignor or "seller" and said form was filled out to show that Rinder sold the car and assigned the title thereto to Pearson on March 11, 1944 and that Rinder's assignment was acknowledged by one LeRoy Hodes as notary public. It conclusively appears from evidence thereafter presented that Rinder did not sell the car or assign the title thereto to Pearson on March 11, 1944 or at any other time. It also conclusively appears that plaintiff had

no knowledge when it introduced exhibit 6 as to when or by whom said document was filled out to show that Rinder sold the car and assigned the title thereto to Pearson on March 11, 1944. Exhibit 6 being of no avail as evidence to establish Pearson's ownership of and title to the automobile at the time of the trust receipt transaction, plaintiff was compelled to resort to other evidence to prove the chain of title under which Pearson became the owner of and received title to the car.

Rinder admittedly had valid title to the car. He testified that he purchased it new from the Packard Motor Company on January 26, 1940; that he sold it to Hodes Motors, Inc., on July 8, 1941, being allowed $817.75 on same as trade-in-value on another car which he purchased from the Hodes company; and that when he consummated this transaction with the Hodes company he merely turned over his certificate of title to it after placing his signature as assignor on the Assignment of Title form on the reverse side thereof and that his signature was not acknowledged nor was any notary public's signature or seal placed on said Assignment of Title form at that time or at any other time in his presence.

R. I. Severans, who had been engaged in the automobile business for 22 years up to July 1, 1944 as the Reliable Motor Sales, testified that he purchased the Packard from the Hodes company for $600 cash on July 11, 1941 and received a bill of sale therefor. This bill of sale was received in evidence. He further testified that he received a written order, dated March 10, 1944, signed by Pearson for the purchase of the Packard and two other cars, which order was received in evidence; that he sold the three automobiles to Pearson for $2,500 cash and delivered them to him on said date and that at that time he also delivered to Pearson the original certificate of title to the Packard issued to Rinder, which then contained on the

Assignment of Title form on the reverse side thereof the signature of Rinder and that of LeRoy Hodes as notary public, and that there was neither a date nor the name of an assignee thereon at that time.

Pearson testified in substance that he bought the Packard with two other cars from Severans on March 10, 1944 and paid him $2,500 for them; that he received from Severans when he purchased the Packard the original certificate of title to same issued to Rinder, which contained on the reverse side thereof everything that appeared thereon at the time of the trial except the name of the purchaser and assignee and that he placed thereon with a stamp "Pearson Motor Sales, 2252 North Cicero Avenue" in the blank space indicated on the form for the name of the purchaser and assignee, which he thought he had a right to do; that he had no used car license of his own when he purchased the Packard from Severans on March 10, 1944, when he entered into the trust receipt financing transaction with plaintiff on April 8, 1944 or when the car was levied upon by the bailiff on May 11, 1944; and that during March, April and May 1944 he was engaged in the used car business without a license, operating under Leibold's license at 2252 North Cicero avenue.

The only evidence presented by defendants that could possibly have any bearing on the ownership of the car was the testimony of Evelyn Sullins and Michael Cosentino.

Evelyn Sullins testified that she was defendants' attorney's wife; that "four or five or more times" during April and May 1944, she visited a used car lot at 2252 North Cicero and on each of such occasions she saw Samuel Leibold in a small shack on said lot; and that each time she went there she saw a Packard car with "license 2536" on it, same being a 1944 Illinois license.

Michael Cosentino testified that he was a municipal court levy bailiff; that he made a levy on a Packard car on May 11, 1944 while it was in a used car lot at 2252 North Cicero avenue with about fifteen other cars; that the car had on it a 1944 Illinois license plate containing the number 2536 and that he saw on the wall in the small office on the lot.a license issued to Samuel Leibold as a used car dealer. It is conceded that dealer's license plate No. 2536 was issued to Leibold.

Defendants contend that "the plaintiff has failed to maintain the burden of proving that its alleged trustee, Pearson Motor Sales, acquired title to the automobile, as the alleged documents on which it relies for such purpose are contradictory, perjured, and forged."

■ Defendants' argument in support of this contention is predicated primarily on the impeachment of the purported assignment of title to Pearson by Rinder, the original owner of the Packard, as evidenced by plaintiff's Exhibit 6. We have already stated that the value of that document as evidence of a transfer of ownership or title to Pearson was completely destroyed by other evidence in the case. But entirely disregarding said purported assignment and eliminating it from consideration, there is other undisputed evidence in the record that shows beyond question that Pearson purchased the Parkard from Severans on March 10, 1944 and that he had a valid title to it when he executed his trust receipt on April 8, 1944 covering this car and on the same day received his loan from plaintiff, thereby consummating the trust receipt financing transaction. Plaintiff proved the entire chain of title to the car from Rinder, the original owner thereof, to Pearson. Rinder sold the car to the Hodes company for a valuable consideration. The Hodes company sold the car to Severans for a valuable consideration. Severans sold the car

to Pearson for a valuable consideration. Even though the title to the car was not transferred or assigned in the course of the successive sales in conformity with the provisions of section 7(d) of the Uniform Motor Vehicle Anti-Theft Act (par. 80, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.081]), nevertheless a valid contract of sale was consummated and the title to the car passed in each instance under section 3 of the Uniform Sales Act (par. 3, ch. 121½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 121.07]), which provides:

"Subject to the provisions of this act and of any statute in that behalf, a contract to sell or a sale may be made in writing (either with or without seal), or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties."

In *L. B. Motors, Inc. v. Pritchard,* 303 Ill. App. 318, where title to an automobile was acquired under a conditional sale contract but a certificate of title to it was not obtained from the secretary of state, it was urged that the owner of such automobile could not give good title. There the court said at p. 323:

". . . The Motor Vehicle Law and the Uniform Motor Vehicle Anti-Theft Act both provide penalties for those persons who do not comply with the provisions thereof. These acts, in our opinion, were not intended as recording statutes and do not in any way alter, modify or change the effect of the provisions of the Uniform Sales Act as construed by our courts and have no application to the facts disclosed by this record. *Mason v. Shelton,* 292 Ill. App. 640, 11 N. E. (2d) 224; *People v. Billardello,* 319 Ill. 124."

(*Commercial Credit Co. v. Schreyer,* 120 Ohio St. 568, and *Smith v. Rust,* 310 Ill. App. 47, are also to the same effect.)

 In our opinion the evidence shows conclusively that Pearson had title to the Packard at the

time he entered into the trust receipt transaction with plaintiff. As a result of that transaction, which complied with the applicable requirements of the Trust Receipts Act, plaintiff obtained a security interest in the car, which was valid at the time said car was levied upon. It will be noted that defendants made no effort to prove that Leibold, their judgment debtor, owned or had title to or any interest in the car. The only evidence introduced by them was that Leibold had a used car dealer's license and that the car was on the premises where he conducted his business with his dealer's license plate on it when the bailiff made the levy and for some time prior thereto. The mere fact that the automobile was in Leibold's possession, if it was, at the time the levy was made and for some time prior thereto did not and could not destroy plaintiff's security interest in it. In so far as defendants are concerned, plaintiff's security interest could only have been defeated, if Pearson, having "liberty of sale," had sold the Packard to Leibold in the ordinary course of trade without knowledge on the part of Leibold of the trust receipt transaction (par. 174, sec. 9(c) of the Act [Jones Ill. Stats. Ann. 135.17(9), subd. (c)]). However, there is no evidence in the record that Leibold purchased the car from Pearson or that he had or claimed to have any interest therein. Even though Leibold apparently had possession of the car at the time of the levy, such possession alone did not affect the validity of plaintiff's security interest. But as has been seen, even Leibold's possession of the Packard when the levy was made was controverted upon the trial. Pearson testified, and his testimony was undisputed, that the car was in his possession at the time the levy was made; that while he had no used car dealer's license himself at the time in question, he operated as such under Leibold's license at the latter's place of business. While Pearson's engagement in business as a used car dealer without a license in

violation of section 12 of the Uniform Motor Vehicle Anti-Theft Act (par. 85, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.086]) at the time of the levy and prior thereto might subject him to prosecution and punishment, it could not militate against the validity of plaintiff's security interest in the Packard.

Defendants also contend that "plaintiff's alleged transaction with Pearson Motor Sales is not a trust receipt transaction under the Uniform Trust Receipts Act, for the reason that the alleged trustee is not shown to have had possession of the automobile for the purpose of selling or exchanging it, or of procuring its sale or exchange." This contention does not merit serious consideration. In view of the evidence in this case it is idle to urge that Pearson did not have possession of the Packard for the purpose of selling or procuring its sale at the time the trust receipt transaction was consummated. We deem it unnecessary to recite in detail the evidence in the record showing that Pearson's possession of not only the Packard but of the other ten used cars involved in the trust receipt transaction was for the sole purpose of selling them or of procuring their sale. Undisputed evidence, most of which has been heretofore set forth, clearly established Pearson's possession of the Packard for such purpose. Pearson at the time of the trust receipt transaction and prior thereto was engaged in the business of buying and selling used cars and he was continuously engaged in that business up to the time of the trial. That he had eleven used cars, including the Packard, in his possession at the time of the trust receipt transaction is undisputed by any evidence in the record and it is preposterous to guess or theorize that his possession of them may have been for some purpose other than to sell them or to procure their sale.

Defendants' argument in support of their instant contention is replete with misstatements as to the

facts and the law, of which the following is an illustration: "The plaintiff has failed to offer one shred of evidence as to any fact which would have put defendants, or the world, or any third party, on notice that Pearson or Pearson Motor Sales had or claimed some interest in the car, and that they might be holding as trustee for plaintiff. Under such circumstances, the filing with the secretary of state of an alleged statement of trust receipt financing executed by Pearson Motor Sales was meaningless, and conferred on plaintiff no rights whatever as against these defendants." We have heretofore discussed the provisions of the Act under which an entruster's security interest attaches to the goods which are the subject matter of a trust receipt transaction and the manner in which the validity of such security interest may be preserved. The impropriety of the foregoing statement can only be attributed to counsel's unfamiliarity with the provisions of the Uniform Trust Receipts Act, the validity of which was upheld in the recent case of *Donn v. Auto Dealers Inv. Co.*, 385 Ill. 211.

Other points have been urged and considered but in the view we take of this case we deem it unnecessary to discuss them.

■ We are impelled to hold that defendants wrongfully caused the levy to be made on the Packard, that plaintiff had a valid security interest in said automobile at the time the levy was made on it and that the trial court did not err in finding the right of property in the Packard automobile in question in plaintiff.

For the reasons stated herein the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND and SCANLAN, JJ., concur.