UNIVERSAL CREDIT COMPANY, INC. *v*. CITIZENS STATE
BANK OF PETERSBURG, INDIANA.

[No. 28,135. Filed December 14, 1945.   Rehearing Denied
January 9, 1946.]

*John E. Early*, and *Henry B. Walker*, both of Evansville, and *Floyd L. Young*, of Vincennes, for appellant.

*Frank Ely*, and *David D. Corn*, both of Petersburg, for appellee.

O'MALLEY, J.—The appellant brought this action against the appellee to recover conditional sale contracts or their value. The appellant is a corporation engaged in financing automobile transactions between the manufacturer and the dealer. In the instant case it entered into an agreement with the Tiffin Motor Company, Incorporated, of Petersburg, Indiana, an automobile dealer, by the terms of which it would furnish the money to purchase automobiles from the Ford Motor Company. In September, 1940, these parties signed and filed with the Secretary of State of the State of Indiana their "Statement of Trust Receipt Financing," as provided by statute. See § 51-613, Burns' 1933 (Supp.).

Prior to that time said parties had entered into two agreements, both of which were in writing and each of which set out the general terms under which they were to operate. One agreement covered financing where the title came from the Ford Motor Company to the dealer and one covered transactions where the title was transferred from the Ford Motor Company direct to the appellant. Each agreement concerned a method of "floor plan financing," and under each agreement the

Tiffin Motor Company, Incorporated, would execute, in blank, a trust receipt and deliver the same to the appellant. In the instant case the Ford Motor Company sold direct to the Tiffin Motor Company, Incorporated, but in no instance was delivery made until appellant paid the invoice price and the trust receipt above referred to was signed and delivered to appellant.

There are seven automobile transactions involved in this matter. In each of them the automobile dealer sold the car to an individual and received a conditional sale contract from the purchaser. Each of these contracts was sold to the appellee by the dealer.

The use of the trust receipt transaction is not new and decisions concerning the same have been pronouncd in numerous jurisdictions in the United States and Great Britain. Under the law applied to transactions of this kind prior to the adoption of the Uniform Trust Receipts Act various courts made rulings that have a value in showing the development of and necessity for this type of financing. See *Barry & Hoogewerff* v. *Boninger & Lehr* (1876), 46 Md. 59; 25 A. L. R. 332; 49 A. L. R. 282; 101 A. L. R. 453; 53 Am. Jur. 961; 22 Columbia Law Review (1922) 395.

The Act with which we are concerned was the result of the needs of merchants and dealers in handling products and machines which are used and needed by the purchasing public. Although originally it was used exclusively in the importing business, the mass production of automobiles, trucks, and various labor saving devices has created a field for the use of loaning corporation facilities which could not be properly served without the creation of the statutory trust receipt.

In addition to filing with the Secretary of State, and thus avoiding a filing or recording for each trans-

action, it likewise eliminates the necessity of searching a great mass of filed or recorded papers.

This filing with the Secretary of State constitutes constructive notice of the proposed method of financing and any rights that may be acquired thereunder. The Act also provides that under some conditions the security lien of the entruster may attach to other goods and things of value that may be received from a sale in the regular course of trade.

In *Donn* v. *Auto Dealers Co.* (1944), 385 Ill. 211, 214, 52 N. E. (2d) 695, 696, it was said:

"The Trust Receipts Act is evidently the result of an effort to meet the needs of the business of financing the purchase and sale of goods on credit without the use of chattel mortgages, and without recording each lien transaction. The apparent purpose in permitting the filing of a statement by such financier and dealer is to have some method of giving notice to other prospective creditors that the former are doing business by the trust receipt financing method. The purpose seems to have been to retain the advantages of a security interest in goods by use of the trust receipt and yet to eliminate, as far as possible, both secret liens and the necessity of recording each transaction."

See also *C. I. T. Corp.* v. *Commercial Bank* (1944), 64 Cal. App. (2d) 722, 149 P. (2d) 439; 9 Uniform Laws Annotated 665.

In those cases which developed prior to the adoption of the statute it seems to have been the rule that the receipt should issue from a third party and not from the one who ultimately did the paying. Some of the reasons for the rule, that it was necessary to come from a third party, were that to permit it to be otherwise might work a fraud on creditors, or the receipt might be rendered of little security value because of the recording statutes.

Under the statute, § 51-601 et seq., Burns' 1933 (Supp.), it is immaterial whether the third party conveys title to the dealer (trustee) or to the entruster, as long as there is an underlying contract outlining the terms to govern the transaction, the giving of new value, and the giving of the instrument which conveys or transfers a security interest to the entruster, together with possession in the trustee for one of the purposes enumerated in the statute.

There are but few cases that have been decided under the Uniform Trust Receipts Act. One case that is in point is *General Motors Acceptance Corporation* v. *Associates Discount Corporation* (1942), 38 N. Y. S. (2d) 972. There the court held that the Trust Receipts Act applied and the car taken in trade was a part of the security, and that the note taken on the sale of the car was likewise a part of the security. However, on appeal this cause was reversed on the question of election of remedies. *General Motors Acceptance Corporation* v. *Associates Discount Corporation* (1944), 267 App. Div. 1032, 48 N. Y. S. (2d) 242.

In *Peoples Finance etc. Co.* v. *Bowman* (1943), 58 Cal. App. (2d) 729, 137 P. (2d) 729, the court was confronted with a situation where two firms were financing a dealer. The defendant financed a new car which was later sold and a used car was taken in part payment. He then took the indicia of title of the used car to the plaintiff and secured financing in exchange for a trust receipt. Defendant did not request an accounting, but filed suit against the dealer and took the property in less than 10 days. This was held sufficient demand to satisfy the statute under the 10 day rule. However, the court held for the plaintiff on the theory that "where one of two innocent persons

must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

The section of the statute which is pertinent to the instant case is as follows:

> "Where under the terms of the trust receipt transaction, the trustee . . ., having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows:
>
> "(a) . . .
>
> "(b) To any proceeds or the value of any proceeds (whether such proceeds are identifiable or not) of the goods, documents or instruments, if said proceeds were received by the trustee within ten (10) days prior to . . . demand made by the entruster for prompt accounting; and to a priority to the amount of such proceeds or value; and also
>
> "(c) To any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within ten (10) days from such knowledge, shall be deemed such a waiver." § 51-610, Burns' 1933 (Supp.).

The statute known as the Uniform Trust Receipts Act, a section of which is above set out, gives rights beyond the immediate goods on which the lien is ■ taken under the contract. For 10 days after a sale or trade by the dealer (trustee), the entruster is protected by a lien on the proceeds without taking any affirmative steps, but a failure to demand an accounting of the proceeds of a sale from the dealer within 10 days, after knowledge of the sale, is a waiver of the lien of the entruster on such proceeds. The terms

of the statute make it necessary that a constant and close scrutiny be kept on every sale or trade on the part of the dealer, who is in a position to do harm to innocent third parties by and through the indicia of ownership placed in or permitted to come into his possession by the entruster.

The appellant bases its right of action on the statute referred to above, and anyone who seeks to enforce a statutory right or liability must, by allegation and proof, bring himself within its provisions. *City of Indianapolis* v. *Evans* (1940), 216 Ind. 555, 24 N. E. (2d) 776; *Hamilton, Administrator* v. *Jones, Administratrix* (1890), 125 Ind. 176, 25 N. E. 192; *State v. Adams Express Co.* (1909), 172 Ind. 10, 87 N. E. 712; *Town of Windfall City* v. *State, ex rel. Wood* (1909), 172 Ind. 302, 88 N. E. 505.

In the section of the statute above set out, the legislature used the words "account" and "accounting," and the only case involving this statute in which there has been an attempt to throw some light on their meaning is that of *Peoples Finance etc. Co.* v. *Bowman, supra,* where the court said (58 Cal. App. (2d) 734, 735, 137 P. (2d) 732):

> "If the trustee is given liberty of sale and is required by the trust receipt to render over to the trustee (entruster) any money, goods or other thing of value received as consideration in the sale of the entrusted goods, the lien of the entruster passes to such goods as may be identified, if the entruster within ten days demands delivery of such goods."

The question involved in this appeal is whether or not the lower court erred in sustaining a demurrer to the appellant's complaint. There are two paragraphs of complaint for each transaction or a total of 14,

and all of these paragraphs are of similar import and generally allege the facts heretofore stated.

In the first 12 paragraphs of this complaint there is no allegation as to the time at which knowledge of the sale came to the entruster. The date of the sale and the date of demand are each set out and it is thus disclosed that more than 10 days elapsed between the sale and the demand. Since a demand not made within 10 days of knowledge of the time of sale is ineffectual to continue the entruster's lien, the court did not err in sustaining the demurrer as to each of these paragraphs of complaint. In the last two paragraphs, demand is alleged as of the date of the sale. It was a demand for the payment of a specified sum of money. Prior to that demand the dealer had assigned the note which was received in the sale of the automobile in question and had received its value from the appellee, and the proceeds in the hands of the trustee consisted solely of money. Under such conditions a demand for the proceeds which were then in the hands of the dealer (trustee), would have been no broader in effect than the simple demand for the amount of money then due the entruster. This demand satisfied the statute.

The court erred in sustaining the demurrer to the thirteenth and fourteenth paragraphs of complaint.

The judgment is reversed with instructions to the trial court to overrule the demurrer to the thirteenth and fourteenth paragraphs of complaint. As to all other things the judgment is affirmed.

Note.—Reported in 64 N. E. (2d) 28.