In the Matter of **HARPETH MOTORS,**
**Inc., Bankrupt.**

No. 22201.

United States District Court
M. D. Tennessee, Nashville Division.

Nov. 3, 1955.

864

Dan E. McGugin, Jr., Nashville, Tenn., for petitioner C. I. T. Credit Corp.

Andrew M. Gant, Asst. U. S. Atty., Nashville, Tenn., for United States.

WILLIAM E. MILLER, District Judge.

Universal C. I. T. Credit Corporation, hereinafter called Credit Corporation, filed its petition before the Referee for an order adjudging its asserted priority and security rights against the assets of the bankrupt under the provisions of certain trust receipts held by it and under the provisions of the Uniform Trust Receipts Law of Tennessee, Code Supp. 1950, § 7792.1 et seq.

Following a hearing, the Referee entered his order on September 21, 1954, disallowing and dismissing the petition. The case is presently before the Court upon the petition of the Credit Corporation for a review of the Referee's order and his findings of fact and conclusions of law.

It is the insistence of the Credit Corporation that it possessed a security interest in seven motor vehicles which had been placed in the hands of the bankrupt for sale under duly executed trust receipts, and that although the vehicles had been sold before bankruptcy and the proceeds therefrom cannot be identified or traced, it is nevertheless entitled to a prior secured claim against the bankrupt's assets. It seeks to support the contention under the provisions of Section 10 of the Tennessee Uniform Trust Receipts Law, 1950 Code Supplement, Section 7792.11. That section vests in the "entruster" in a trust receipt transaction (in this case the Credit Corporation), the right to the value of the proceeds of goods covered by a trust receipt where the "trustee" in the transaction (in this case the bankrupt), has sold the goods and the proceeds therefrom cannot be traced or identified in the hands of the trustee.

The determinative question is whether Section 10 creates a lien upon the trustee's assets to secure payment of the entruster's claim for the value of unidentifiable proceeds, or whether it merely accords such value claim a priority in the distribution of the trustee's assets among his general creditors in insolvency or bankruptcy proceedings.

The Referee, having found that the proof was insufficient to trace the proceeds of the seven vehicles or to identify them in the hands of the bankrupt or in the hands of the trustee in bankruptcy, construed Section 10 of the Uniform Trust Receipts Law as vesting in the Credit Corporation as the entruster a right to the value of the proceeds protected merely by a priority in the distribution of assets among general creditors in insolvency, and not by a lien or charge in the nature of a lien against the assets of the trustee in the trust receipt transaction. He further held that such priority was not entitled to recognition in bankruptcy for the reason that Section 64 of the Bankruptcy Act, 11 U.S. C.A. § 104, accords priority only to certain classes of claims not including priorities created by state law.

It is undisputed from the evidence, and the Referee found, that the transactions between the Credit Corporation and the bankrupt with respect to the seven vehicles were "trust receipt transactions" within the meaning of the Uniform Trust Receipts Law of Tennessee; that the Credit Corporation as the entruster under the Act held duly executed trust receipts covering each of the motor vehicles; that the Credit Corporation, more than four months prior to the filing of the petition in bankruptcy, had duly filed with the Secretary of State of Tennessee, in conformity with the Act, a "Statement of Trust Receipt Financing" Code Supp.1950 Tenn. § 7792.14;

that the seven vehicles were sold by the bankrupt in the ordinary course of trade either for cash or partly for cash and partly for traded-in vehicles; and that the proceeds from the sales were received by the bankrupt although they could not be identified among its assets.

Section 10 of the Tennessee Uniform Trust Receipts Law, upon which the Credit Corporation relies, reads as follows:

> "Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows: (a) to the debts described in section 7792.10(3); and also (b) to any proceeds or the value of any proceeds (whether such proceeds are identifiable or not) of the goods, documents or instruments, if said proceeds were received by the trustee within ten days prior to either application for appointment of a receiver of the trustee, or the filing of a petition in bankruptcy or judicial insolvency proceedings by or against the trustee, or demand made by the entruster for prompt accounting, and to a priority to the amount of such proceeds or value; and also (c) to any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within ten days from such knowledge, shall be deemed such a waiver."

If the statute merely confers a right of priority to the extent of the claim of value in the general distribution of the assets of the trustee in the security transaction, such right of priority, as the Referee correctly held, would be unenforceable in the trustee's bankruptcy proceedings. This is true because the classes of claims given priority in distribution of assets in bankruptcy prescribed by Section 64 of the Bankruptcy Act are exclusive, and by the Chandler Amendment of 1938, state created priorities, with one exception not pertinent in this case, were eliminated from the Act. Halpert v. Industrial Commissioner of the State of New York, 2 Cir., 147 F.2d 375; Strom v. Peikes, 2 Cir., 123 F.2d 1003, 138 A.L.R. 937.

But Section 67, sub. b of the Bankruptcy Act preserves state created liens or security interests, although some legal proceedings or further steps may be necessary to effectuate them after bankruptcy has intervened. 4 Moore's Collier on Bankruptcy, 14th Ed., Section 67.-20(2), p. 181.

A clear statement of the distinction between a lien and a right to priority of payment from unencumbered assets is set forth in 3 Moore's Collier on Bankruptcy, 14th Ed., Section 64.02, pp. 2055, 2056:

> "Considerable confusion exists in bankruptcy administration because of a failure to distinguish clearly between a valid lien and a right to prior payment from unincumbered assets. The former entails a right to enforcement independent of bankruptcy; it may be created by agreement or statute, or by judgment of a court. The latter is a narrow right to payment at a certain relative point in the distribution of a bankrupt debtor's property, naked of any power of levy or attachment; it is a creature of the Bankruptcy Act. Quite different consequences in bankruptcy are appended to each. A valid lien, subject to the qualifications and restrictions previously stated, is a charge against assets which must be met before distribution to unsecured creditors begins.

A right to priority accords an unsecured claim a particular precedence over other claims in the distribution of the bankrupt's remaining assets. A particular debt may be secured by a lien arising from a statute or agreement, and yet be entitled to priority, too."

■ The Uniform Trust Receipts Law has as its general purpose the regulation of transactions involving the use of trust receipts. Apparently the trust receipt was first used almost exclusively in the importing business, but for many years has been used in this country in connection with the financing by lending companies of the purchase of automobiles by automobile dealers. Annotation 168 A.L.R. 359, 360. The wide use of the trust receipt in this field of financing led to the formulation of the Uniform Act and its adoption by many of the states. Its underlying policy and general purpose are summarized in the Annotation in 168 A.L.R., (p. 360), as follows:

"The Trust Receipts Act is evidently the result of an effort to meet the needs of the business of financing the purchase and sale of goods on credit without the use of chattel mortgages, and without recording each lien transaction. The apparent purpose in permitting the filing of a statement by such financer and dealer is to have some method of giving notice to other prospective creditors that the former are doing business by the trust-receipt financing method. The purpose seems to have been to retain the advantages of a security interest in goods by use of the trust receipt and yet to eliminate, as far as possible, both secret liens and the necessity of recording each transaction. Donn v. Auto Dealers Invest. Co., 1944, 385 Ill. 211, 52 N.E.2d 695. See also Commercial Discount Co. v. Los Angeles County, 1940, 16 Cal.2d 158, 105 P.2d 115, infra, V b.

"The principal purpose of the Uniform Trust Receipts Act was to facilitate the financing of sales and other transactions and to afford the 'lender every conceivable protection in handling trust receipt and pledge transactions, so that the use of these security devices may be increased.' Commercial Credit Corp. v. Horan, 1945, 325 Ill.App. 625, 60 N.E.2d 763."

The Tennessee Act, 1950 Code Supplement, Sections 7792.1–7792.19, defines the term "security interest" as follows:

" 'Security interest' means a property interest in goods, documents, or instruments, limited in extent to securing performance of some obligation of the trustee or of some third person to the entruster, and includes the interest of a pledgee, and title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only."

By Section 13, 1950 Code Supplement, Section 7792.14, provision is made for recording by conferring upon the entruster the right to file with the Secretary of State a statement of trust receipt financing setting forth that the entruster and the trustee propose to engage in financing under trust receipt transactions.

After such filing with the Secretary of State, the security interest of the entruster under individual trust receipts is protected against general creditors and subsequent lien creditors, as well as against subsequent purchasers other than purchasers in the ordinary course of trade. 1950 Code Supplement, Sections 7792.8, 7792.9, 7792.10.

■ That the statute creates a security interest clearly appears from the definition of the term "entruster" as meaning a person "who has or directly or by agent takes a security interest in goods, documents or instruments under a trust receipt transaction, and any successor in interest of such person." 1950 Code Supplement, Section 7792.2.

The term "trustee" is defined as "the person having or taking possession of goods, documents or instruments under a trust receipt transaction, and any successor in interest of such person." However, the Act provides that the use of the word trustee "shall not be interpreted or construed to imply the existence of a trust or any right or duty of a trustee in the sense of equity jurisprudence other than as provided by this chapter." Code Supp.1950 Tenn. § 7792.2. To enforce the security interest of the entruster the Act confers upon him broad rights to repossess the property and to sell it at public or private sale, the proceeds of sale to be applied to discharge the debt secured and the remainder to be paid over to the trustee.

Section 10 of the Act extends the security interest or lien of the entruster, under certain conditions, to the proceeds derived from the sale of the entrusted goods where such proceeds can be identified or traced. That result was reached by the Supreme Court of Indiana in Universal Credit Corporation, Inc., v. Citizens State Bank, 224 Ind. 1, 64 N.E. 2d 28, 168 A.L.R. 352, in construing a section of the Uniform Trust Receipts Act of that state which is the counterpart of Section 10 of the Tennessee Act. There was a similar holding in Hamilton National Bank v. McCallum, 6 Cir., 58 F.2d 912, with respect to identifiable proceeds of entrusted property, although the case was decided under the terms of common law trust receipts not regulated or controlled by statute. The specific holding was that the lien of the entruster extended to identifiable proceeds and was enforceable in the bankruptcy proceedings of the trustee in the trust receipt transaction under Section 67 of the Bankruptcy Act.

But no case has been found and none has been cited by counsel dealing with the question either at common law or under statute whether the entruster's security interest extends to the assets of the trustee in the trust receipt transaction where the proceeds from the sale of the entrusted property cannot be traced or identified.

Although the interpretation of the statute is not free from doubt, the Court is of the opinion that it was the legislative purpose under Section 10 not only to create a lien upon identifiable proceeds derived from the sale of entrusted goods, but also to create a lien upon the trustee's other assets to secure payment of the value of the proceeds in the event the proceeds cannot be identified or traced. Admittedly, such a lien to secure the value of the proceeds is not conferred by the statute in express terms, but the failure to create the lien expressly is not fatal to its existence if it follows by necessary implication from the terms of the statute.

If Section 10 went no further than to confer upon the entruster the right to receive the value of unidentifiable proceeds and accorded to such right a priority in distribution of the trustee's assets among general creditors, it would clearly be a mere state created priority not enforceable in the bankruptcy proceeding of the trustee. But it appears to the Court that Section 10 can be given such a limited scope only by disregarding certain language of the section, particularly the clause "to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee".

This language, which qualifies all rights conferred by Section 10, places the entruster's right to receive the "value" of unidentifiable proceeds upon the same plane and in effect gives it the same scope and status as the entruster's security interest in the entrusted goods before their sale by the trustee. It is apparent that the phrases "to the extent to which" and "all classes of persons" refer to the other provisions of the Act defining the classes of persons as to whom the entruster's security interest is valid and enforceable, as well as those provisions defining the scope of the security interest. As observed above, where filing has been made with the Secretary of State,

the classes of persons as to whom the entruster's security interest is valid, include (a) general creditors of the trustee, (b) subsequent purchasers other than purchasers in the ordinary course of trade, and (c) subsequent lien creditors whether their liens are acquired by attachment, levy, or by any other similar operation of law or judicial process.

The term "lien" is generally defined as a charge upon property for the payment or discharge of a debt or duty, or a right which the law gives to have a debt satisfied out of a particular thing. 33 Am.Jur., Liens, Sec. 2, p. 419. The right to receive the "value" derived from the sale or disposition of entrusted goods necessarily contemplates payment of such value out of the general assets of the trustee. It thus constitutes a charge against the trustee's property and being, by the express terms of the statute, valid and enforceable against and having priority over both general and subsequent lien creditors as well as subsequent purchasers other than purchasers in the ordinary course of trade, it is practically and legally indistinguishable from a technical lien. Since it is a claim which is enforceable to the same extent and as against the same persons as the entruster's security interest in the entrusted goods, it would appear that a lien is impressed to the extent of the value of the proceeds as effectively as if it had been declared by the statute in express terms. No reason appears why such a superior charge against the trustee's assets could not be enforced, as any other lien, by proceedings in a court of equity by attachment or injunction or other similar process.

Viewed in this light, it is apparent that the statute with respect to the value right or claim of the entruster goes much further than to create a mere priority in the distribution of the assets of the trustee in insolvency proceedings, for it creates in the entruster's favor a claim against the trustee's property having the same status as a lien claim and enforceable as such independently of an insolvency or bankruptcy proceeding.

The construction of the Uniform Act as conferring a mere priority upon a general distribution of the trustee's assets, without a security interest, appears to be incompatible with both the wording and general purpose of Section 10. The language employed, as already noted, leaves no doubt that it was the purpose of the Section to place the claim of the entruster to the proceeds or their value upon the same legal basis as his security interest in the goods covered by the trust receipt. A different interpretation would altogether fail to account for the express provision that the rights conferred by Section 10 shall be valid and enforceable to the same extent and as against the same classes of persons as the security interest in the goods.

Moreover, Section 10 cannot reasonably be construed as making the insolvency of the trustee a condition precedent to the rights conferred. On the contrary, the language of the section is that the rights created may be preserved *either* by making a timely demand for an accounting within ten days from the receipt of proceeds, *or* by the intervention within that period of bankruptcy, receivership, or insolvency proceedings. The requirement for a ten-day demand would thus appear to have been intended to preserve the entruster's rights even in the absence of a proceeding looking to the general distribution of the assets of the trustee. The strict time limitation imposed to preserve the rights conferred, in the absence of insolvency proceedings, corroborates the idea that a security interest was intended, as there would appear to be no particular reason for such a requirement to enforce a bare priority right.

In the absence of a general insolvency proceeding occurring within the ten-day period, it is incumbent upon the entruster, in order to preserve his rights, to maintain a constant surveillance over the trustee's sales and to make the demand for an accounting within the ten-day period. If the demand is not made as required by subsection b of Section 10, the right of the entruster to receive the

value of proceeds which cannot be identified is extinguished. However, under subsection c the entruster would still have the right to receive any proceeds which he was able to identify, provided that he makes a demand for an accounting within ten days after he acquires actual knowledge that such proceeds exist.

Under the view which the Court takes of the Uniform Act it is not necessary to discuss the general principles governing the tracing of trust funds in the hands of a bankrupt at the time bankruptcy intervenes. These principles were referred to by the Referee in his findings, but the notion that the Uniform Trust Receipts Act provides for a trust is inconsistent with the express provisions of the Act that the creation of a trust is not intended, as well as the general scheme of the Act to provide merely for a security interest. The trust theory would also involve the difficulty that Section 10 expressly provides that the rights of the entruster are preserved whether the proceeds are identifiable or not, thus excusing the usual requirements for tracing trust funds.

The Referee also indicated in his findings that he construed the petition of the Credit Corporation as not claiming a lien but merely priority rights in the distribution of assets. However, it appears to the Court that the petition, fairly construed, is broad enough to claim all rights to which the Credit Corporation is entitled under the Uniform Trust Receipts Act, including any lien or security rights, particularly in view of the prayer of the petition for general relief.

As the rights of the Credit Corporation are governed by subsection b of Section 10 of the Uniform Act, the question remains whether it made demand for a prompt accounting with respect to the seven vehicles within ten days after the bankrupt received the proceeds from their sale, there being no question that bankruptcy did not intervene until after expiration of the ten-day period.

From an examination of the evidence, it is found that there is no dispute as to the dates when demands were made by the Credit Corporation for accountings, although there is some conflict as to the dates when the vehicles were sold and the proceeds of sale received by the bankrupt. However, as to receipt of proceeds the Court agrees with the Referee that the testimony of the Secretary of the bankrupt should be accepted since she testified from her records and not from memory.

It is disclosed that the Credit Corporation made demand for an accounting on April 11, 1949. This demand was timely as to three of the vehicles, the Ford Tudor bearing No. 547545, and the Ford Fordor bearing No. 549557, both sold on April 6, 1949, and the Ford Custom Tudor bearing No. 547580 sold on April 11, 1949. The demand of April 11, 1949 was not timely as to the two Ford Business Coupes, bearing Nos. 527018 and 529236 sold on March 28, 1949. Another demand was made on April 18, 1949 with respect to a Ford Truck bearing No. 141028 and a Ford Convertible bearing No. 503904. But the Ford Truck was sold September 30, 1948, although the proceeds had been received September 16, 1948, and the Ford Convertible was sold on March 31, 1949.

It results that the security claim of the Credit Corporation is sustained as to the first three vehicles mentioned above and is disallowed as to the remaining vehicles.

A judgment will be submitted accordingly.