In re V–I–D, Inc.

KELLEY, GLOVER & VALE, Inc. v. KRAMER et al.

No. 10573.

United States Court of Appeals Seventh Circuit.

July 16, 1952.

Rehearing Denied Aug. 28, 1952.

Jay E. Darlington, Hammond, Ind., for appellant.

John W. Lyddick, Gary, Ind., Goldberg, Devoe, Brussell & Shadur, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and KERNER and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from an order of the District Court which overruled the objection of Kelley, Glover & Vale, Incorporated, Trustee, the appellant, to the allowance in a bankruptcy proceeding for the corporate reorganization of the Debtor, V-I-D, Inc., of all claims based on bearer bonds secured by a certain trust indenture executed December 30, 1927, by Charles Baran and Rosie Baran, his wife, the then owners of certain real estate located in Lake County, Indiana, to the Home Bank and Trust Company, an Illinois corporation, and Lawrence H. Prybylski, a resident of Chicago, Illinois, as Trustees. The trust indenture

also named Peter L. Evans as Successor Trustee. There were 270 bonds secured by this trust indenture, each for the principal sum of $500.00.

The claims on these bonds were filed in this reorganization proceeding by Charles J. Kramer and Helen Kramer, his wife, who purchased, after maturity, 200 of these bonds aggregating a total principal face value of $101,000.00, and by Peter L. Evans, the Successor Trustee, on behalf of the holder of the remainder of these bonds. The appellant, Kelley, Glover & Vale, Incorporated, Trustee, held a second mortgage on this real estate securing the payment of the original principal sum of $45,000.00. Both the trust indenture and this second mortgage were duly recorded in Indiana. This mortgage was foreclosed in the Porter Superior Court. The decree, entered February 5, 1931, found that there was then due to the mortgagee the principal sum of $38,970.88, with interest from that date at the rate of 6 per cent per annum.

The parties agree that the real estate here involved is not of sufficient value to satisfy either of these claims. For that reason the District Court ordered that the Trustee in the reorganization proceeding should not participate in this appeal either in person or by counsel.

The principal contention of the appellant is that, since the Home Bank and Trust Company was a foreign corporation which never qualified to do business in Indiana, and since the District Court found that the negotiation by it of the trust indenture loan in Indiana constituted "doing business" in Indiana within the meaning of the Indiana statutes, Burns' Indiana Statutes Annotated 1926, § 4909 and Burns' Indiana Statutes Annotated 1950 Replacement, § 18–2301, no action may be maintained by or on behalf of the present holders of the bonds in either a state or a federal court in Indiana.

An early Indiana statute, Burns' Indiana Statutes Annotated 1926, § 4918, provided a penalty for foreign corporations which did business in Indiana without complying with the requirements of this statute,

"* * * and, in addition to such penalty, if, after this act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained, either at law or in equity, upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state."

A later Indiana statute on this subject, Burns' Indiana Statutes Annotated 1950 Replacement, § 18–2328, provides:

"(a) *No foreign corporation transacting business in this state without procuring a certificate of admission * * * shall maintain any suit, action or proceeding in any of the courts of this state* upon any demand, whether arising out of contract or tort; and every such corporation so transacting business shall be liable by reason thereof to a penalty of not exceeding ten thousand dollars ($10,000), * * *.

"(b) If any foreign corporation shall transact business in this state without procuring a certificate of admission, * * * *such corporation* shall not be entitled to maintain any suit or action at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort, in any court in this state; * * *." (Our emphasis.)

State statutes vary on the requirements for the admission of foreign corporations to do business in the states and on the penalties for non-compliance. Some statutes expressly provide that contracts made by non-complying foreign corporations shall be wholly void. Some statutes make such contracts void only on behalf of the non-complying corporations. Some provide that such contracts shall also be void on behalf of the assignees of the corporation or on behalf of other persons claiming under the corporation. Other statutes provide that such contracts shall be void only on behalf of the corporation but shall be enforceable against the corporation. These variations in the state statutes naturally lead to wide variations in the decisions of the state courts construing the statutes.

 Indiana courts hold that the Indiana statute does not make a contract made by a non-complying corporation void, but only prevents the corporation from using

the courts of the state to enforce the contract. If a foreign corporation complies after making the contract, it may then maintain an action on the contract in the courts of Indiana. Selph v. Illinois Pipeline Co., 206 Ind. 490, 190 N.E. 191, and Peter & Burghard Stone Co. v. Carper, 96 Ind.App. 554, 172 N.E. 319, 775. See also Metropolitan Life Insurance Co. v. Kane, 7 Cir., 117 F.2d 398, 133 A.L.R. 1163, and Reconstruction Finance Corporation v. Barnett, 7 Cir., 118 F.2d 190, two cases decided by this court. The appellant insists that this statutory restriction on the non-complying foreign corporation also applies to its assignees, the present holders of these bonds.

However, we need not dwell on the question of whether the present owners of these bonds could maintain an action on the bonds in the Indiana state court because their claims were presented in a bankruptcy court. The Supreme Court has repeatedly held that in the allowance of claims a bankruptcy court is not required to follow state statutes.

In Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 162, 67 S.Ct. 237, 240, 91 L.Ed. 162, the court held:

"In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no such implication. That case decided that a federal district court acquiring jurisdiction because of diversity of citizenship should adjudicate controversies as if it were only another state court."

In the Vanston case, a reorganization proceeding, the question was as to the allowance of interest on interest. The laws of the state where the contract was made and of the state where the real estate was located, differed on the question. In its opinion in that case the Supreme Court said further, 329 U.S. at page 163, 67 S.Ct. at page 240, that bankruptcy courts

" * * * must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to deter-

mine how and what claims shall be allowed under equitable principles."

In American Surety Co. v. Sampsell, 327 U.S. 269, 66 S.Ct. 571, 90 L.Ed. 663, the court held that certain laborers and materialmen could assert their claims in a bankruptcy court although the claims could not have been asserted in the California state courts because the claimants had not complied with a state statute which required them to give a statutory notice of their claims.

In Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, the court held that claims on which the New York statute of limitations had run could be asserted in a bankruptcy court. In that case the court said, 327 U.S. at page 394, 66 S.Ct. at page 584:

"The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of an equitable right created not by a State legislature but by Congress."

And further, 327 U.S. at page 395, 66 S.Ct. at page 584:

"The present case concerns not only a federally-created right but a federal right for which the sole remedy is in equity. * * * We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. * * *"

In Prudence Realization Corporation v. Geist, 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293, a bankruptcy court in New York, applying the rule of the New York Court of Appeals, held that a claimant there was not entitled to share in the distribution until other creditors had been paid in full. This order was affirmed by the United States Court of Appeals for the Second Circuit,

122 F.2d 503, but the Supreme Court reversed, saying, 316 U.S. at page 95:

"Nothing decided in Erie R. Co. v. Tompkins, supra, 62 S.Ct. at page 982 [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188,] requires a court of bankruptcy to apply such a local rule governing the liquidation of insolvent estates. The bankruptcy act prescribes its own criteria for distribution to creditors. In the interpretation and application of federal statutes, federal not local law applies. (Citing cases.)"

The objector here insists that the decision in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, is decisive of this question, and the objector is apologetic for not having found the case in time to cite it to the District Court. We think it is clear that the Woods case has no bearing on the question with which we are here confronted. True, that case involved a contract for a real estate commission secured by a non-complying foreign corporation doing business in the State of Mississippi. It is also true that the decisions of the Mississippi courts held that such a contract was not void but only unenforceable in the courts of that state. There, however, the jurisdiction of the federal court was invoked on grounds of diversity of citizenship. The case, therefore, held, as did Erie Railroad Co. v. Tompkins, that in diversity cases the federal court could not entertain a suit to which the state had closed its courts. As we have shown in the quotations from the Supreme Court decisions cited above, bankruptcy courts were created by Congress for the purpose of administering bankruptcy matters and are governed by federal law. A bankruptcy court does not sit "as another state court" and is not governed by state laws. It orders distribution to creditors according to the criteria prescribed by the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

The appellant also insists that the claims on these bonds are invalid because the trustees named in the trust indenture were not residents of Indiana as required by Burns' Indiana Statutes Annotated 1951 Replacement, § 56-620. This statute says:

"It shall be unlawful for any person, association or corporation to nominate or appoint any person a trustee in any deed, mortgage or other instrument in writing (except wills), for any purpose whatever, who shall not be, at the time, a bona fide resident of the state of Indiana; and it shall be unlawful for any person who is not a bona fide resident of the state to act as such trustee. * * *"

In the early case of Roby, Trustee v. Smith, 131 Ind. 342, at page 346, 30 N.E. 1093, 1094, 15 L.R.A. 792, the Supreme Court of Indiana in discussing this statute said:

" 'A citizen of the United States cannot be denied the right to take and hold absolutely real and personal property in any state of the Union, nor can he be denied the right to accept the conveyance of such property in trust for his sole benefit, or for the benefit of himself and others. This right is incident to national citizenship.' Section 2, art. 4, of the constitution of the United States, declares that 'the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states.' "

It is true that the factual situation in that case was different from the situation in the instant case but the broad indictment of the statute quoted above is sufficient also to cover the situation which we are here considering. See also Johnston v. State of Indiana, 212 Ind. 375, 381, 8 N.E.2d 590, 10 N.E.2d 40, and Kist v. Coughlin, 222 Ind. 639, 653, 57 N.E.2d 199, 586.

But if the statute were held to be constitutional it does not follow that this trust deed is void. The trust deed here was in effect a mortgage, the only purpose of which was to secure the payment of the loan made to the owners of the real estate. The loan was evidenced by the 270 bearer bonds which were sold to strangers to the original transaction. There is no intimation that there was anything wrong with the loan, legally or morally, except that it was negotiated by a non-complying foreign corporation and that the trust indenture exe-

cuted by the parties named non-residents of Indiana as trustees. In Bryant v. Richardson, 126 Ind. 145, 153, 25 N.E. 807, 810, the court expressed doubt as to the constitutionality of this statute but said that two non-residents named in the trust were trustees *de facto*, and that although "their appointments may have been invalid in law, yet they were named in the agreement of the parties to the instrument, and while they permitted this agreement to stand they would be bound by their acts." Throughout that opinion the court treated the trust as if it were valid even though the trustees named were not residents of Indiana.

■ It is a general rule uniformly recognized by the courts that a trust will never fail for want of a trustee, and "a court of equity will always appoint a trustee where necessary to the administration of a trust or to prevent failure of a trust, whether the necessity arises from failure of appointment, from nonacceptance or disqualification of a trustee, or from other cause. * * * " 54 Am.Jur. 106, § 122, and 1 Scott on Trusts (1939) §§ 33.1 and 35.2. This general rule is recognized and followed by the Indiana courts. Rice v. Fletcher Savings & Trust Co., 215 Ind. 698, 703, 22 N.E. 2d 809; Turner v. Henshaw, 86 Ind.App. 565, 578, 155 N.E. 222, Transfer denied 1927; Bray v. Old National Bank, 113 Ind. App. 506, 517, 48 N.E.2d 846.

■ We see, therefore, that even if the Indiana statute disqualifying non-resident trustees were to be considered constitutional, the District Court correctly held that the trust was valid.

Here no one denies that the money represented by these bonds was loaned to the then owners of this real estate and that this money was not repaid. It is admitted that the trust indenture was executed by the owners of the real estate to secure the payment of these bonds, and was duly recorded on January 17, 1928, in the mortgage records of Lake County, Indiana, where the real estate was located. It was there of record for all to see when the objector, more than five months later, made a loan to the owners of the real estate and accepted a second mortgage to secure that loan. The

appellant may have been of the opinion then that the real estate was of sufficient value to secure both loans. The appellant does not claim that there was any fraud or unfair practice which influenced it in making the later loan and in accepting the second mortgage as security. It would seem most inequitable to now permit the appellant, when it appears that the property is not of sufficient value to cover both loans, to relegate these bondholders to second place, while the appellant, the holder of the second mortgage, steps into first place.

■ The appellant's final contention is that a foreclosure of an improvement lien on this real estate and the resulting sheriff's deed operated "to divest and transfer to Marguerite S. Glover the indenture lien against this real estate," and that the rights so acquired by her were later conveyed by a quit claim deed to the appellant.

This contention is based on the following facts. On August 7, 1934, the U.S.A. Company filed an action in the Superior Court of Lake County to foreclose certain improvement assessment liens on this real estate. These liens, by law, were senior to the liens of the two mortgages. Don Hoover, the then owner of this real estate, and his wife, as individuals, and the Home Bank and Trust Company and Lawrence H. Prybylski, as Trustees, were named as defendants. A summons was served on a Don Hoover who lived in Gary, Indiana, but he was not the owner of the real estate. No service was had on the Don Hoover who was the owner. The two trustees, being non-residents, were served only by publication. Later a judgment by default was rendered against all of the defendants and, pursuant to the decree, the property was sold by the Sheriff of Lake County and a sheriff's certificate was issued to the U.S.A. Company on April 15, 1935. This sheriff's certificate was later assigned to Marguerite S. Glover who, thereafter, on October 27, 1936, surrendered the certificate and received the sheriff's deed. On February 25, 1937, the trustees under the trust indenture filed a verified petition asking that the foreclosure judgment be opened and that they be allowed to defend. Such a petition was authorized by Burns' Indiana Statutes An-

notated 1946 Replacement, § 2–2601, which provides as follows:

"Parties against whom a judgment has been rendered without other notice than the publication in a newspaper as herein required, except in cases of divorce, may, at any time within five (5) years after the rendition of the judgment, have the same opened, and be allowed to defend".

Notice was served on the U.S.A. Company but it failed to appear. Pursuant to the petition, the judgment was thereafter vacated and set aside. The trustees then filed an answer and paid into the court the amount claimed to be due to the U.S.A. Company on the special assessments. There was no appeal from the order vacating the foreclosure decree. Thereafter the owner, Don Hoover, by a quit claim deed conveyed the real estate to V-I-D, Inc., the debtor herein. This conveyance, dated February 23, 1939, was prior to the filing by the debtor of its petition for reorganization. The petition listed the real estate as an asset of the debtor and stated that it was encumbered by the two mortgages. On December 1, 1939, Marguerite S. Glover intervened and filed her petition in the bankruptcy court claiming that she was the owner of the fee simple title of the real estate, and asking that she be adjudged the owner, that possession be surrendered to her and that there be an accounting to her of the rents collected by the trustee who was appointed in this proceeding. The matter of her petition was heard by a Master. The District Court confirmed the report of the master which found that Marguerite S. Glover took title to the real estate subject to the rights of those who had been served by publication in the foreclosure proceeding to open up the decree within the time and within the manner prescribed in the Indiana statute, and that her remedy was to accept the money which had been paid into the court as a refund of the purchase price. The court found that the foreclosure decree was void as to Hoover, the owner, and also as to V-I-D, Inc., the debtor, to which Don Hoover had, in the meantime, conveyed his fee simple title. That judgment of the bankruptcy court was appealed to this court and was affirmed in In re V-I-D, Inc., Debtor—Glover v. Coffing, 7 Cir., 158 F.2d 964.

As suggested by this court in that appeal, Marguerite S. Glover's remedy was to accept the money which the trustees of the trust indenture had paid into court. When the decree foreclosing the lien for the improvement assessments was set aside and the money was paid into court, the lien of those assessments was necessarily extinguished and whatever interest in the real estate Marguerite S. Glover had acquired by the sheriff's deed was destroyed.

The appellant, however, is still arguing that the judgment opening up and setting aside the foreclosure decree was invalid. When the trustees of the trust indenture by their petition under § 2–2601 brought themselves within the terms of the statute, as they did, it was mandatory that the Lake County Court open up the judgment. Creighton v. Schaefer, 117 Ind.App. 518, 523, 72 N.E.2d 360; Padol v. Home Bank & Trust Co., 108 Ind.App. 401, 406, 27 N.E.2d 917.

■ The appellant in the instant case contends that the Indiana statute gives a defendant only the right to open up a judgment to *defend* against the action and that here the trustees confessed that the judgment was valid by paying into the court the full amount demanded by the complaint. We think the statute may not be so narrowly interpreted.

In Gary Hobart Investment Realty Co. v. Earle, 78 Ind.App. 412, 135 N.E. 798, the owner of real estate filed a petition under this statute to open up a decree foreclosing a tax lien. In that case also land in Lake County, Indiana, was involved. There also the land had been sold by the sheriff pursuant to a decree. The owner of the land filed a petition alleging that he was a resident of Chicago, Illinois, that he did not know of the lien, of the proceeding to foreclose the lien, of the decree, or of the sale. With his petition he tendered an answer in general denial. There the purchaser at the tax sale contended, 78 Ind.App. at page 415, 135 N.E. at page 799, that the statute did not permit a judgment to be vacated

without a showing by the defendant that he had a meritorious defense and that the judgment was wrong. But in its decision the court said, 78 Ind.App. at page 416, 135 N.E. at page 799:

"In this case the appellee Rosenthal clearly brought himself within the provisions of the above-quoted sections of our statute, and notice of the time and place of the hearing of such application was duly given to the appellant. For us to say that it was necessary for the appellee Rosenthal to state facts in said application showing that the said judgment, which he sought to have set aside, was wrong, and that he had a valid defense thereto, would be for us to add terms to this statute not placed there by our Legislature."

 As the court there pointed out, the statute is remedial in its nature and should be liberally construed to effectuate its purpose.

Finding no merit in the appellant's contentions, the judgment is affirmed.