283 P.2d 937

COMMERCIAL CREDIT CORPORATION, a corporation, Plaintiff-Respondent,

v.

Max BOSSE, Bosse Motor, Inc., a corporation; Mackenzie Auto, Inc., a corporation; Ralph Leese; C. J. Billmeyer; Dale Kirkham; R. B. Bistline & Martha Bistline; Mendenhall's of Pocatello, a corporation; Charles R. Hall, d/b/a Hall Machinery & Motor Supply, and Alma Marley, Sheriff, Defendants-Appellants,

and

United States of America, Additional Defendant-Appellant.

No. 8210.

Supreme Court of Idaho.

May 11, 1955.

Bistline & Bistline, Pocatello, for appellants Mackenzie Auto, Inc., et al.

Sherman F. Furey, Jr., U. S. Atty., and Marion J. Callister, Asst. U. S. Atty., Boise, for appellant United States.

Gee & Hargraves, Pocatello, for respondent.

PORTER, Justice.

 Idaho has adopted the Uniform Trust Receipts Act. It is contained in Title 64, Chapter 10, Idaho Code. The object of the Uniform Trust Receipts Act and the method of operation thereunder are described in In re Chappell, 77 F.Supp. 573, at page 575, as follows:

"The object of the Act is to standardize and protect the trust receipt method of financing the acquisition and resale of goods in their journey from producer to retailer. Vol. V Fordham Law Review 240, 242. Stripped of all technical verbiage a trust receipt has been well defined as 'a useful and convenient method of financing commercial transactions by means of which title passes directly from the manufacturer or seller to the banker or lender who as owner delivers the goods to the dealer in whose behalf he is acting secondarily, and to whom title goes ultimately when the primary right of the banker has been satisfied.' Hamilton National Bank v. McCallum, 6 Cir., 58 F.2d 912."

■ The interest of the entruster in the property under a trust receipt transaction is denominated a "security interest". The Trust Receipts Acts of the various jurisdictions are not entirely uniform. Under our statute, Section 64–1002, I.C., the security interest of the entruster may be derived from the trustee or from any other person.

Pursuant to Section 64–1013, I.C., respondent, as entruster, and Bosse Motor, Inc., of Pocatello, as trustee, on March 2, 1953, filed a statement of trust receipt financing with the Secretary of State. On May 26, 1953, Nash Motors, a division of Nash-Kelvinator Sales Corp., shipped a Nash automobile to Bosse Motor, Inc., at Pocatello; and such Nash-Kelvinator Sales Corp. drew a sight-draft on respondent for $1,864, being the sale price of such automobile. Respondent paid the sight-draft and also paid the freight on the automobile in the sum of $131. On June 1, 1953, Bosse Motor, Inc., executed a trust receipt in favor of respondent covering such Nash automobile in the sum of $1,995.

On June 29, 1953, Bosse Motor, Inc., sold and delivered possession of such automobile to Bosse Nash, Inc., a corporation

transacting business in Boise. The sale price was $1,995. Bosse Nash, Inc., on such date delivered its check in the sum of $1,864 to Bosse Motor, Inc., being the amount of the purchase price of the car from Nash Motors, and arranged to pay the $131 representing the freight charge by an offset on accounts between the corporations. On the same date, Bosse Motor, Inc., deposited such check in its account in the Idaho Bank & Trust Co., of Pocatello; and drew on such bank and delivered to the Commercial Credit Corporation a check for $1,995 to cover the security interest of respondent in such Nash automobile.

On June 30, July 1, and July 3, 1953, all the appellants except Alma Marley, Sheriff of Bannock County, and United States of America, caused to be served upon the Idaho Bank & Trust Co. garnishments under writs of attachment issued in suits brought against Bosse Motor, Inc. The Idaho Bank & Trust Co., in order to discharge itself as garnishee, delivered to. the sheriff its cashier's checks aggregating $2,099.14 and exhausting the account of Bosse Motor, Inc. When respondent presented the check from Bosse Motor, Inc., it was not paid by the bank by reason of the garnishments.

On July 8, 1953, respondent served a demand on Bosse Motor, Inc., for an accounting for the proceeds received from the sale of the Nash automobile.

On July 9, 1953, respondent commenced this action in claim and delivery to recover $1,995 from the possession of the defendant and appellant, Alma Marley, Sheriff of Bannock County. The nine defendant attaching creditors answered and moved that appellant, United States of America, be made a defendant, which motion was granted by the court. Appellant, United States of America, answered the complaint claiming prior tax liens on the funds in question.

Thereafter respondent dismissed the action as against Max Bosse and Bosse Motor, Inc., a corporation. The case was tried on the issues between respondent and appellants. At the trial it appeared from the evidence that the United States Commissioner of Internal Revenue assessed income taxes against Bosse Motor, Inc. in the amount of $1,286.45 for the year 1952; that the assessment list containing such assessment was received by the Director of Internal Revenue for the District of Idaho on April 17, 1953; and that notice of such tax lien was filed in the office of the Recorder of Bannock County on July 21, 1953. It further appeared from the evidence that the United States Commissioner of Internal Revenue assessed withholding and Federal Insurance Contribution Act taxes against Bosse Motor, Inc., in the amount of $1,882.-55 for the period ending June 30, 1953; that the assessment list containing such assessment was received by the Director of Internal Revenue for the District of Idaho

on July 28, 1953, and that notice of such tax lien was filed in the office of the Recorder of Bannock County on July 29, 1953. The taxes covered by such tax liens have not been paid although demand has been made therefor.

Judgment in favor of respondent was entered by the trial court in the sum of $1,864. Appellants have appealed from such judgment.

Appellants do not question the regularity of the trust receipt transaction between respondent and Bosse Motor, Inc. They do not appear to challenge the ownership of the Nash automobile by respondent to the extent of respondent's security interest therein. In re Otto-Johnson Mercantile Co., D.C., 52 F.2d 678; Walton v. Commercial Credit Co., 68 S.D. 151, 299 N.W. 300; In re K. Marks & Co., 2 Cir., 222 F. 52; Chichester v. Commercial Credit Co., 37 Cal.App.2d 439, 99 P.2d 1083; C.I.T. Corp. v. Commercial Bank of Patterson, 64 Cal.App.2d 722, 149 P.2d 439. Appellant, United States of America, does not contend that it had a tax lien on the automobile superior to the rights of respondent.

Appellants contend that the only liberty of sale possessed by Bosse Motor, Inc., under the trust receipt and Section 64–1009, I.C., was to sell the automobile in the ordinary course of trade. That the purported sale to Bosse Nash, Inc., was not a sale in the ordinary course of trade and was unauthorized and void. That respondent still retained the ownership of its security interest in such automobile after the sale; that its rights to protect its security interest are limited to a recovery of the automobile; and that respondent has no property interest in or lien upon the proceeds of the sale of such car received by Bosse Motor, Inc.

The trust receipt contains these provisions:

"Trustee's possession of said Merchandise hereunder is for the purpose of the sale thereof at retail, in the regular course of business. * * * Trustee, upon consent of Entruster, will sell said Merchandise for not less than the minimum sale price set opposite each item of the above mentioned Merchandise and, immediately after sale, trustee shall deliver to Entruster from the proceeds of said sale, the amount of said minimum sale price. Until such delivery, Trustee shall hold the entire proceeds in trust for Entruster, separate from the funds and property of Trustee."

Section 64–1009, I.C., deals both with sales in the ordinary course of trade and with sales to others than buyers in the ordinary course of trade and with the respective rights arising out of such transactions between such purchasers and the entruster. It nowhere prohibits sales other

than in the ordinary course of trade where the trustee has liberty of sale. Such statute also provides:

"If the entruster consents to the placing of goods subject to a trust receipt transaction in the trustee's stock in trade or in his sales or exhibition rooms, or allows such goods to be so placed or kept, such consent or allowance shall have like effect as granting the trustee liberty of sale."

The Nash automobile was kept in the trustee's stock in trade in its garage in Pocatello with the knowledge and consent of respondent. The record also indicates that at least three other cars had been sold from time to time in the same manner by Bosse Motor, Inc., to Bosse Nash, Inc. The controversy in this case is not over the respective rights of respondent and Bosse Nash, Inc., or of an innocent purchaser from Bosse Nash, Inc., in and to the automobile. It is immaterial so far as the rights of appellants are concerned as to whether Bosse Motor, Inc., had a right to sell the car under the trust receipt or under the statute, or whether it had a right to sell the car by reason of respondent's acquiescence in such transactions. Respondent has elected to recognize and ratify such sale and is entitled to pursue its remedy against the proceeds thereof. There is no merit in appellants' contentions in this respect.

Appellants also contend that respondent has no property interest in the proceeds of the sale but at most has a lien thereon which was inchoate until the serving of the demand for an accounting on July 8, 1953. Section 64-1010, I.C., so far as material herein, reads as follows:

"Entruster's right to proceeds.— Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster *shall be entitled,* to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows:

\*　　\*　　\*　　\*　　\*　　\*

"(b) *to any proceeds* or the value of any proceeds (whether such proceeds are identifiable or not) of the goods, documents or instruments, if said proceeds were received by the trustee within ten days prior to either application for appointment of a receiver of the trustee, or the filing of a petition in bankruptcy or judicial insolvency proceedings by or against the trustee, or demand made by the entruster for prompt accounting; and to a priority to the amount of such proceeds or value; and also

"(c) to any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within ten days from such knowledge, shall be deemed such a waiver." (Emphasis supplied.)

Section 64–1001, I.C., defines "security interest" as follows:

" 'Security interest' means a *property interest* in goods, documents or instruments, limited in extent to securing performance of some obligation of the trustee or of some third person to the entruster, and includes the interest of a pledgee, and title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only." (Emphasis supplied.)

■ In this case the specific proceeds of the sale of the Nash car are identifiable and are included in the funds now in the hands of appellant sheriff. The deposit of such proceeds to the account of Bosse Motor, Inc., and the giving of its check therefor to respondent, did not change the character thereof or deprive respondent of its rights therein. The testimony is that such procedure was only a convenient bookkeeping practice. Under the statute respondent is entitled, to the extent of its security interest, to the proceeds of the sale. Its interest therein is a property interest and not a lien.

■ The words, "shall be entitled to" are defined in McIntosh v. Vail, 126 W.Va. 355, 28 S.E.2d 95, at page 97, as follows:

"Nor do the words 'shall be entitled to' create any difficulty. The expression 'entitled to' has been construed either as signifying the actual vesting of title or as giving an equitable right to claim title. Holbrook v. Wightman, 31 Minn. 168, 17 N.W. 280; Thompson v. Thompson, 107 Ala. 163, 18 So. 247; Spencer v. Barker, 96 Kan. 360, 149 P. 736; Meehan v. Jones, C.C., 70 F. 453."

In Hamilton Nat. Bank v. McCallum, 6 Cir., 58 F.2d 912, at page 914, the court held that the entruster had a property interest in the proceeds of the sale by the trustee under a trust receipt and used the following language:

"Whatever was received for appellants' cars, either in the way of money or property, less profit or commissions, became the property of the appellants."

In In re James, Inc., 2 Cir., 30 F.2d 555, at page 558, the court held that the proceeds of a sale became the property of the entruster and said:

"The trust receipts conferred a power of sale, with the corresponding

duty, however, to keep the proceeds separate, and immediately hand such proceeds to each trust receipt holder. As title to the motorcars was not in the bankrupt, neither was the money received from their sale. And such security title of a trust receipt, when it properly comes to its holder from the exporter or manufacturer, and not from one whose debt is secured thereby, will be protected."

See, also, In re Cattus, 2 Cir., 183 F. 733; Universal Credit Co. v. Citizens State Bank, 224 Ind. 1, 64 N.E.2d 28, 168 A.L.R. 352.

The proceeds of the sale of the Nash car being identifiable, we are not called upon herein to determine the nature of the entruster's rights to the value of proceeds of a sale by the trustee where the proceeds are not identifiable.

 · Having determined that the security interest of respondent in the funds held by appellant sheriff is a property right, it follows that respondent was entitled to maintain its action in claim and delivery to recover such proceeds. Such property right was at all times present in such proceeds and is unaffected by any of the tax liens or attachment liens of appellants against the property of Bosse Motor, Inc. The judgment of the trial court is affirmed. Costs to respondent.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.