## COMMERCE UNION BANK OF NASHVILLE, TENNESSEE, v. H. H. ALEXANDER, Administrator, d/b/n With Will Annexed of D. A. TEMPLETON, Deceased. —312 S. W. (2d) 611.

Middle Section, Nashville. December 20, 1957.

Certiorari denied by Supreme Court May 2, 1958.

Williams C. Sugg, Nashville, for Commerce Union Bank.

Simms & Simms and Stevens & Bagley, Fayetteville, for H. H. Alexander, Administrator.

FELTS, J. The insolvent estate of D. A. Templeton, deceased, is being wound up in the court below. The part of it now before us is an appeal by the Administrator *de bonis non* from a decree of the court allowing the Commerce Union Bank priority on its claim for the value of the proceeds of certain motor vehicles on which the Bank held trust receipts and which had been disposed of and not accounted for by decedent.

D. A. Templeton was an automobile dealer doing business as Templeton Pontiac Company in Fayetteville. The Bank was lending him money to purchase automobiles through the familiar method of trust receipt financing, each loan being evidenced by his note secured by a trust receipt under which the Bank held title to the vehicle. The Bank had filed in the office of the Secretary

of State statements of this trust receipt financing and otherwise complied with the Uniform Trust Receipts Law, which has been enacted in this State without material change (T. C. A. secs. 47-1001 to 47-1019).

Templeton died June 3, 1955, owing the Bank a total of $36,306.49, evidenced by notes secured by trust receipts on 32 motor vehicles. On that day, shortly before his death, the Bank's agent came to his place, demanded an accounting for the cars entrusted to him, and found he had disposed of 18 of them, on which the Bank held trust receipts totaling $29,010.68. To cover this sum, he issued to the Bank three checks on the Lincoln County Bank, which reached the drawee after his death and were returned unpaid.

After investigation of his affairs, the Administrator and the Bank traced and identified, as part of the assets of the estate, trust proceeds in the sum of $18,517.03 of vehicles on which the Bank held trust receipts and which had been disposed of and not accounted for by decedent. They also found that he had disposed of other vehicles covered by trust receipts in the sum of $17,789.46, and received proceeds in excess of that amount, which he had deposited to his accounts in his banks but which could not be further traced or identified in the assets.

On July 5, 1955, the Bank filed its bill in the Chancery Court at Fayetteville to reclaim these identifiable trust funds in the sum of $18,517.03. The Chancellor granted this relief, and that sum was paid the Bank by the Administrator. The Chancellor's decree expressly reserved any adjudication of the question of the Bank's right to a lien on the general assets for the value of these unidentifiable trust funds. Thereafter, the Bank filed in this

cause in the court below its present claim for such lien in the sum of $17,789.46.

The court allowed this claim for a lien in the sum of $13,870.98, with interest and attorney's fees as provided in the notes, but denied priority to two items— one for $2,963.67, the proceeds of two cars which decedent had sold and received such proceeds more than 10 days prior to the Bank's demand on him for an accounting, and the other for $954.81, being the excess balance due on certain notes after applying the proceeds of the sales of cars securing them. These two items, totaling $3,-918.48, were allowed as a common claim.

The Bank acquiesced in that decree. The Administrator *de bonis non* appealed from it and insists that the court should have denied this claim for priority or a lien on the general assets for the value of these unidentifiable trust proceeds, because none of such proceeds came into the hands of himself or of the Administrator, but were deposited by decedent in his bank accounts, part of them spent by him, and the rest applied by the banks on his notes to them; and because no statute or rule of law gives the Bank any right to such lien on the assets of this insolvent estate.

Thus the question is whether the Bank, the entruster, is entitled to a charge or lien on the general assets of this insolvent estate for the value of these unidentifiable trust proceeds. This depends on section 10 of our Uniform Trust Receipts Law (T. C. A. sec. 47-1011), which is to be construed in the light of the pre-existing general principle of equity for following trust proceeds. That principle has been well stated as follows:

"[A]s between cestui que trust and trustee, and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust" (Turner, L. J., in Pennell v. Deffell, 4 De G., M. & G. 372, 388, 43 English Rep. (Chancery) 551, 558).

The majority rule, and the rule in this State, is that the *cestui,* in order to follow trust funds into the hands of such a party, must be able not only to trace them to him but to show he has specific, identifiable property into which such funds went; although some courts hold that if his general estate has been swelled by such funds, the *cestui* may have a charge on the estate for their value. McDowell v. McDowell, 144 Tenn. 452, 458, 234 S. W. 319, 18 A. L. R. 623; Bragg v. Osborn, 147 Tenn. 381, 248 S. W. 19. To the same effect: 4 Scott on Trusts (2nd Ed.) secs. 507, 514.1, 521; 4 Bogert on Trusts and Trustees (1948) sec. 921.

Section 10 of our Uniform Trust Receipts Law (T. C. A. sec. 47-1011) is in these words:

"Entruster's Right to Proceeds.—Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods, documents or instruments, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security inter-

est was valid at the time of disposition by the trustee, as follows:

"(a) to the debts described in Section 9(3) [T. C.A. sec. 47-1010(3)]; and also

"(b) to any proceeds or the value of any proceeds (whether such proceeds are identifiable or not) of the goods, documents or instruments, if said proceeds were received by the trustee within ten days prior to either application for appointment of a receiver of the trustee, or the filing of a petition in bankruptcy or judicial insolvency proceedings by or against the trustee, or demand made by the entruster for prompt accounting, and to a priority to the amount of such proceeds or value; and also

"(c) to any other proceeds of the goods, documents or instruments which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the entruster of the existence of proceeds, without demand for accounting made within ten days from such knowledge, shall be deemed such a waiver" (9A Uniform Laws Annotated, pp. 308-309; T. C. A. sec. 47-1011).

 Thus, where, as here, the trustee without right sells the goods entrusted to him without accounting for them, this section, read with the others, defines the entruster's right to the proceeds, by declaring the class of persons against whom it is good and the instances to which it extends. That class of persons includes the trustee, his general creditors, subsequent purchasers other than purchasers in the ordinary course of trade, and subsequent lien creditors.

The instances or classes of proceeds to which the entruster is entitled are: (a) "the debts described in Section 9(3)" [T. C. A. sec. 47-1010(3)]—debts owing to the trustee for goods sold; (b) "any proceeds or the value of any proceeds (whether such proceeds are identifiable or not)" received by the trustee within 10 days before either of the events stated, and "to a priority to the amount of such proceeds or value"; and (c) any other proceeds which are identifiable, unless the provision for an accounting has been waived by the entruster.

In classes (a) and (c) the proceeds are identifiable, as required by the equity rule above mentioned; but in class (b) the entruster is entitled to the proceeds or their value, *"whether such proceeds are identifiable or not"*, if they were received within 10 days of either of the events stated, and the entruster is entitled to "a priority to the amount of such proceeds or value". In this particular, the statute goes beyond the equity rule, doubtless because the trustee's estate usually has been swelled by such proceeds and because such a provision was deemed advisable in order to facilitate the business of trust receipt financing.

It is true the statute does not expressly say the entruster shall have a lien on the general assets of the trustee for the value of such unidentifiable proceeds, but this seems to be the necessary effect of the language used. It provides that the entruster shall be entitled to the value of such proceeds and to priority for the amount thereof. Such proceeds being unidentifiable in the general assets, and the entruster being entitled to priority for their value, of necessity such prior payment must be made from such assets; that is, the entruster has a lien on them for such payment.

Such is the construction given the Uniform Trust Receipts Law by its authors. 9A Uniform Laws Annotated, p. 279C(7). A similar conclusion was reached in a well-considered opinion by United States District Judge Miller in a bankruptcy proceeding in In re Harpeth Motors, D. C., 135 F. Supp. 863.

It is urged for appellant, however, that while this statute gives the entruster the priority here contended for in receivership, bankruptcy, and judicial insolvency proceedings, it does not apply to such a proceeding as this for winding up a decedent's insolvent estate; and that this proceeding is governed by our statute (T. C. A. sec. 30-520) which fixes the order of preference of payment of demands against decedents' estates.

■■ We think our Uniform Trust Receipts Law gives the entruster' this priority or lien for the value of proceeds where they were received by the trustee within 10 days before either of the events stated—receivership, bankruptcy, judicial insolvency proceedings, or demand for an accounting; that when the Bank made such demand on the trustee within 10 days, it acquired a priority or lien on his assets for the value of such proceeds; and that this lien thus fixed in his lifetime was not affected by his death or the insolvency of his estate. Richardson v. Vick, 125 Tenn. 532, 543-544, 145 S. W. 174; McDowell v. McDowell, supra, 144 Tenn. 458, 234 S. W. 319.

Appellant contends that the cause was the same and the parties (or privies) were the same in the former chancery suit and in this proceeding; and that, therefore, the chancery decree, under which the Bank recovered and was paid $18,518.03, as the value of the identifiable assets, was *res judicata* and a bar of the Bank's right to

maintain this claim for the value of the unidentifiable assets.

It is not denied that in the former suit the Bank sued only for the identifiable proceeds, not those now in suit, and that that decree was likewise limited, expressly stating no adjudication was made as to these proceeds or their value. It is urged, however, that the Bank could not split its cause of action and recover part of it in that suit and sue for the rest in this proceeding.

█ The fault with this argument is that the claims of the Bank were not one entire indivisible demand, but were based on numerous separate trust receipt transactions, each evidenced by a separate note, constituting separate and independent debts; and the entruster could sue for and recover part of the proceeds of such transactions in the former suit and the balance in the present proceeding. See Matheny v. Preston Hotel Co., 140 Tenn. 41, 203 S. W. 327; Ragsdale v. Hill, 37 Tenn. App. 671, 682-683, 269 S. W. (2d) 911, 916-917.

Appellant contends that the County Court had no jurisdiction to entertain the Bank's claim in this proceeding, because it has no jurisdiction to declare or enforce a lien, which is purely an equitable remedy exclusively within the jurisdiction of the Chancery Court.

Chapter 175, Acts of 1939 (T. C. A. sec. 30-509 et seq.) set up a simple, expeditious, and inexpensive remedy for the administration of decedents' estates. Such administration is made a proceeding *in rem* in which the County Court is given jurisdiction to take charge of the assets of the estate of decedent, whether the estate be solvent or insolvent, and to determine and adjudicate claims

against the estate and order their payment. 2 Pritchard, Wills and Estates, Phillips (3rd ed.), sections 742-746.

In case of insolvent estates the County Court has jurisdiction, concurrent with the jurisdiction of the Chancery Court, to sell lands of decedent to pay his debts and in such an insolvency proceeding, the statute (T. C. A. sec. 30-602) expressly provides: "The court shall have the same powers as a court of chancery in like cases, and the mode of procedure, except as herein modified, shall follow that prescribed for the conduct of such causes in chancery." Commerce Union Bank v. Gillespie, 178 Tenn. 179, 156 S. W. (2d) 425; Motlow Milling Co. v. Waterfield, 178 Tenn. 634, 162 S. W. (2d) 378.

For the reasons above stated, we think our Uniform Trust Receipts Law, in the circumstances here appearing, gave the Bank a priority or lien on the general assets of the trustee; that this lien was not affected by his subsequent death and the insolvency of his estate; and that the County Court, in which this insolvent estate is being administered, has the same jurisdiction to determine the Bank's claim and to declare and enforce its lien in the same way as a court of chancery might do if the estate were being administered there.

Appellant makes some other questions which have been fully considered but which we think do not require further discussion. All of the assignments of error are overruled and the decree of the County Court is affirmed. The cause will be remanded to that court for further proceedings not inconsistent with this opinion. The costs are adjudged against the Administrator *de bonis non.*

Hickerson and Shriver, JJ., concur.