In the Matter of CROSSTOWN MOTORS, INC., Bankrupt.

COMMERCIAL CREDIT CORPORA-TION, a corporation, Petitioner-Appellant,

v.

C. Wylie ALLEN, Trustee, Respondent-Appellee.

No. 12610.

United States Court of Appeals Seventh Circuit.

Oct. 15, 1959.

Rehearing Denied Dec. 29, 1959.

Edward P. McKeown, Chicago, Ill., Raymond J. Boland, and John C. Trussell, Chicago, Ill., for appellant.

Joseph L. Kadison, Charles G. Martin, Leo J. Powers, Chicago, Ill., Louis I. Kessler, Chicago, Ill., of counsel, for appellee.

Before MAJOR, SCHNACKENBERG and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

Crosstown Motors, Inc. (Crosstown) was adjudicated a bankrupt in August, 1957 on an involuntary petition following an assignment for the benefit of its creditors made on July 22, 1957. Prior thereto it was a Ford dealer in Chicago.

In October, 1955 Crosstown entered into a "floor plan" financing agreement with petitioner-appellant, Commercial Credit Corporation (Commercial). Commercial complied with all the requirements of the Illinois Trust Receipts Act and Commercial and Crosstown continued to operate under their financing agreement until July 20, 1957 when Commercial repossessed the automobiles which Crosstown then held under individual trust receipts running to Commercial.

For the period from January 1, 1957 to its assignment for the benefit of creditors, Crosstown operated at a loss in excess of $32,000. On January 29, 1957 Commercial made a $25,000 unsecured capital loan to Crosstown to be repaid in twelve equal monthly payments of $2,083.34 each. Crosstown made the payments due in March, April, May and June, and on July 16, 1957 paid the sum of $2,166.67, being the $2,083.34 payment due in July plus interest.

On July 12, 1957 Commercial made a "car check" at Crosstown and discovered Crosstown had sold eighteen cars out of trust without remitting to Commercial. On July 15, 1957 Commercial made demand on Crosstown pursuant to the provisions of § 10 of the Illinois Trust Receipts Act.[1] Crosstown requested time to raise the money. On July 19, 1957 Commercial made another "car check" and learned that Crosstown had sold seven more cars out of trust without paying Commercial. Commercial made another demand. On that same day Crosstown executed a trust receipt to Commercial on ten unencumbered used trucks owned by Crosstown to cover a deficit incurred in the sale of 1956 Ford demonstrators in May, 1957, which trucks Commercial later sold for the sum of $5,250.

It is agreed by the parties to this appeal that all the proceeds from the out of trust sale of the twenty-five cars were used by Crosstown before July 19, 1957 to pay its payroll and other current obligations and none of such proceeds came into the bankrupt estate.

Commercial filed a petition for a prior lien on the general assets of the Bankrupt, claiming such a lien under § 10 of the Illinois Trust Receipts Act in the sum of $50,578.24 for the twenty-five automobiles sold by Crosstown out of trust. Issues were joined by an answer alleging, *inter alia*, that § 10, relied on by Commercial, does not create a lien on the general assets of the Bankrupt but is a state-created priority invalid under § 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, and

---

1. Ill.Rev.Stat.1957, ch. 121½, § 175.

that if said § 10 does create a lien it would be invalid under §§ 60, 67 and 70 of the Bankruptcy Act, 11 U.S.C.A. §§ 96, 107, 110; and by a counterclaim for the value of the ten used trucks trust receipted to Commercial by Crosstown on July 19, 1957 and for the payments made by Crosstown to Commercial on the $25,000 unsecured capital loan on March 19, April 16, May 17, June 18 and July 16, 1957 as voidable preferences and Commercial's reply thereto alleging, *inter alia*, that the transfer of the ten used trucks and the loan payments were not voidable preferences.

The cause was heard by the Referee in Bankruptcy. The Referee filed detailed findings of fact and conclusions of law and in conformance therewith entered an order denying Commercial's petition and ordering judgment on the counterclaim against Commercial in the sum of $7,416.67, representing the $5,250 for which Commercial sold the ten used trucks and the payment of July 16, 1957 of $2,166.67. On review the District Court affirmed the Referee, adopted the findings and conclusions of the Referee as its own and entered judgment conformably. This appeal followed.

To us the prime issue here is whether § 10 of the Illinois Trust Receipts Act gives the entruster a lien on the general assets of a bankrupt or a priority in payment for the value of the proceeds from out of trust sales which were expended for operating expenses prior to bankruptcy.

This section entitled Entruster's Rights To Proceeds reads, in applicable part, as follows:

"Where, under the terms of the trust receipt transaction, the trustee * * *, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods * * *, the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows:

* * * * * *

"(b) To any proceeds or the value of any proceeds (whether such proceeds are identifiable or not) of the goods * * *, if said proceeds were received by the trustee within ten days prior to either application for appointment of a receiver of the trustee, or the filing of a petition in bankruptcy or judicial insolvency proceedings by or against the trustee, or demand made by the entruster for prompt accounting; and to a priority to the amount of such proceeds or value;".

 Commercial cites and relies upon the case of Inter-State Water Co. v. City of Danville, 1942, 379 Ill. 41, 39 N.E.2d 356, 358, as providing the rule of statutory construction which "is pertinent to the issues in this case." We agree. Thus we consider the entire Illinois Trust Receipts Act as a whole, with each part or section "construed in connection with every other part or section", and, as stated on page 46 of 379 Ill., on page 358 of 39 N.E.2d,

"[i]n seeking the intent of the legislature the courts consider not only the language used but the evil to be remedied and the object to be attained."

The Uniform Trust Receipts Act was drafted long prior to 1938. It was adopted by the Illinois legislature in 1935. At that time § 64 of the Bankruptcy Act specifically recognized state-created priorities. Thus the object to be attained by § 10 of the Illinois Trust Receipts Act was to give to the entruster a priority ahead of general creditors upon insolvency of the trustee. Nothing more was necessary. Nothing more was contemplated. The legislative intent is crystal clear.

When the legislature provided in § 10 that the entruster was entitled, on the insolvency of the trustee, "to a priority to the amount of" the proceeds from the goods or the value thereof it meant exactly what it said, *i. e.*, priority. A cursory examination of the entire Act clearly illustrates that when the legisla-

ture intended to mean lien the word "lien" was used. Thus, had it intended to create a lien on the general assets of the insolvent to the exclusion of the costs of administration as well as the general creditors, it certainly would not have used the word "priority". By so doing it specifically provided for only a preference or priority on distribution and thereby fixed the extent of the interest of the entruster in the insolvent's assets.

In 1938 Congress passed the Chandler Act whereby § 64 of the Bankruptcy Act was amended, *inter alia,* by elimination of state-created priorities, with an exception as to rent which, of course, is not relevant here. The necessity for the exclusion of state-created priorities by Congress was obvious as many bankrupt estates had been consumed, to the exclusion of general creditors, by the ever increasing classes of state priorities. Collier on Bankruptcy, Vol. 3, p. 2052.

When § 10 of the Illinois Trust Receipts Act is silhouetted against this historical background the reason for the absence of the word "lien" and the use of the word "priority" is pellucid. In 1935, when the Illinois Trust Receipts Act was passed by the Illinois legislature, such a state-created priority was recognized in bankruptcy. However, since the passage of the Chandler Act the priority provided by § 10 applies in insolvency proceedings other than bankruptcy but is void under § 64 of the Bankruptcy Act now and as it existed at the time of the transactions in the case at bar. The cases of Universal Credit Co. v. Citizens State Bank, 224 Ind. 1, 64 N.E.2d 28, 168 A.L.R. 352; Commerce Union Bank of Nashville v. Alexander, Tenn.App., 312 S.W.2d 611, and Commercial Credit Corporation v. Bosse, 76 Idaho 409, 283 P.2d 937; cited by Commercial are inapposite as they did not involve bankruptcy proceedings, and we disagree with the District Court in the case of In re Harpeth Motors, 135 F.Supp. 863, upon which Commercial relies so heavily.

Having decided that § 10 of the Illinois Trust Receipts Act does not create a lien, the contention of Commercial that it had a contractual lien by virtue of the provision in each trust receipt that it was executed pursuant to the Uniform Trust Receipts Act as in effect in Illinois and that the entruster and trustee should have such other and further rights as may be provided by law is without merit. The short answer to this contention is that even if § 10 of the Illinois Trust Receipts Act became a part of the trust receipt as though written out in full therein the trust receipt could not thereby create a lien where none existed under the statute.

■ The Referee found, which finding was adopted by the District Court, that on and after July 1, 1957 Crosstown was insolvent. Commercial contends that this finding is not sustained by sufficient evidence. The very most that can be said for Commercial's position is that the evidence on the question of insolvency was in conflict. We cannot say that this finding is clearly erroneous on this record, and we believe it to be adequately supported by the evidence.

■ On July 19, 1957 Crosstown had ten used trucks which were its free unencumbered property, for which it then gave Commercial a trust receipt. Commercial claims the consideration therefor was the release of the security interest in the 1956 Fords sold in May of 1957 at a loss of $17,500. Commercial argues that this is a valid consideration which removes the transfer from the category of a voidable preference as under the Illinois Trust Receipts Act the release or surrender of a valid security interest is within the purview of the definition of "new value". The argument is founded on a false premise. The Bankruptcy Act is here superior to any state statute. Moore v. Bay, 1931, 284 U.S. 4, 5, 52 S.Ct. 3, 76 L.Ed. 133; In re V-I-D, Inc., 7 Cir., 1952, 198 F.2d 392, 396. It is undisputed that the trust receipt given by Crosstown to Commercial on July 19, 1957, covering the ten used trucks, was for a deficit incurred in the sale of some 1956 Ford demonstrators some two months previous. Therefore, the trust receipt constituted a transfer of property

for an antecedent debt within the meaning of § 60, sub. a, of the Bankruptcy Act.

The Referee found that on and after July 1, 1957 Crosstown was insolvent and on July 12, 1957 Commercial had reason to so believe. Thus, the payment of $2,166.67 made to Commercial by Crosstown on July 16, 1957 and the transfer of the ten used trucks on July 19, 1957, later sold for $5,250, were preferences within the meaning of § 60, sub. a, of the Bankruptcy Act and void against the Trustee in Bankruptcy, and recovery on the counterclaim in the sum of $7,416.67 was justified.

Order and judgment affirmed.