HORTON, Judge
In January, 1964, pursuant to Section 608.28, Fla.Stat., F.S.A., Nash Miami Motors, Inc., a Florida corporation, filed a voluntary petition for dissolution. The chancellor appointed a trustee to wind up the *492 corporate affairs. At the time of the trustee’s appointment, Nash Miami had, as part of its assets, some 22 automobiles which it had under lease to the Dade County Board of Public Instruction. The automobiles had been financed by the First National Bank of Miami under a trust receipt transaction. As an incentive for the leasing agreement, Nash Miami had received from American Motors some $5,000. The consideration for the leasing agreement was paid by Dade County Board of Public Instruction immediately upon execution of said agreement. At the time of the trustee’s appointment, Nash Miami had a total of approximately $5,000 in funds. In February, 1964, the trustee petitioned the chancellor for approval of the sale of the 22 leased automobiles and to order the proceeds, some $36,000, to be paid to the First National Bank of Miami. He further requested the court to determine whether the remaining indebtedness to the bank should be satisfied prior to an income tax claim which had been filed by the U. S. Internal Revenue Department. The petition was granted and the court authorized the trustee to sell the leased automobiles and to pay the proceeds to the barde. He was further
“Authorized and directed to pay out of and from the funds held by him as trustee of Nash Miami Motors, Inc. (including the funds received by him from the sale to Venetian Rambler, Inc. of the automobile parts and other physical assets of Nash Miami Motors, Inc.) the sum of $9,655.25, plus accrued interest, if any, to the First National Bank of Miami as payment of the balance due and owing to said bank in connection with said automobiles and to receive in exchange therefor from said bank an acknowledgment of the receipt of full payment of all sums due by Nash Miami Motors to said bank upon the promissory note or notes and trustee’s receipt agreement heretofore executed by Nash Miami Motors to said bank.” [Emphasis supplied.]
The government appeals that portion of the order authorizing the trustee to pay to the First National Bank the sum of $9,655.25, plus interest, prior to satisfying the income tax claim asserted by the government.
The government contends, and we agree, that the $9,655.25 is comprised of general assets of Nash Miami Motors, and as such, under the facts of this case, is not secured by the trust receipt transaction. We reach our conclusion after having considered the applicable provisions of Chapter 673, Fla.Stat., F.S.A., the Florida Codification of the Uniform Trust Receipts Law, the cases which have dealt with same (English v. Universal C.I.T. Credit Corp., 278 F.2d 750 (C.A. 5th Cir.); Universal C.I.T. Credit Corp. v. Thursbay Chevrolet, Fla.App.1961, 136 So.2d 15) and cases dealing with the same provision in other states (In Re Crosstown Motors, Inc., 272 F.2d 224 (C.A. 7th Cir.); Commercial Credit Corp. v. Hoff, 1962, 228 Md. 533, 180 A.2d 830). Chapter 673.10, Fla.Stat., F.S.A., provides in part:
“Entruster’s right to proceeds. Where, under the terms of the trust receipt transaction, the trustee has no liberty of sale or other disposition, or, having liberty of sale or other disposition, is to account to the entruster for the proceeds of any disposition of the goods * * * the entruster shall be entitled, to the extent to which and as against all classes of persons as to whom his security interest was valid at the time of disposition by the trustee, as follows:
“ * * *
“(b) To any proceeds or the value of any proceeds (whether such proceeds are identifiable or not) of the goods * * * if said proceeds were received by the trustee within ten days prior to either application for appointment of a receiver of the trustee, or the filing of a petition in bankruptcy or judicial insolvency proceedings by or against the *493 trustee, or demand made by the en-truster for prompt accounting; and to a priority to the amount of such proceeds or value; and also
“(c) To any other proceeds of the goods * * * which are identifiable, unless the provision for accounting has been waived by the entruster by words or conduct; and knowledge by the en-truster of the existence of proceeds, without demand for accounting made within ten days from such knowledge, shall be deemed such a waiver.”
We have found no authority giving an entruster a lien or a priority on the general assets of the trustee where the goods which are subject to the trust receipt are still owned by the trustee and when sold upon dissolution of the trustee fail to bring enough funds to satisfy the obligation in connection therewith.
Furthermore, we do not construe the word proceeds as used in § 673.10, Fla.Stat., F.S.A., to include funds received by the trustee from the “use” of the entrusted property. It is our view that the provisions of the statute are applicable in a proper case where the trustee has converted the goods and the conversion proceeds, identifiable or not, are sought as a replacement. We hold that appellant’s contention which seeks to present for the first time here the validity vel non of the trust receipt transaction is an untimely assault and an attempt to inject into the case an issue of fact not raised before, and accordingly, we do not concern ourselves therewith. See English v. Universal C.I.T. Credit Corp., supra.
In accordance with the principles above referred to, so much of the order as authorizes and directs payment of the sum of $9,655.25, plus accrued interest, to appellee is reversed, and the cause is remanded for further proceedings to determine priority of payment under applicable law.
Reversed and remanded.