**GREATER CHICAGO AUTO AUCTION, INC., Plaintiff,**

v.

**ASSOCIATES DISCOUNT CORPORA- TION, and Ellis Burnett, d/b/a Burnett Used Cars, Defendants.**

No. 61 C 82(1).

United States District Court
E. D. Missouri, E. D.

May 25, 1962.

Goldenhersh, Goldenhersh, Fredericks, Newman & Lane, St. Louis, Mo., for plaintiff.

Hinkel & Carey, St. Louis, Mo., for Associates Discount Corp.

Irving M. Malnik, St. Louis, Mo., for Ellis Burnett, d/b/a Burnett Used Cars.

HARPER, Chief Judge.

This suit was brought in the District Court by Greater Chicago Auto Auction, Inc., an Illinois corporation, hereinafter referred to as Auction, against Associates Discount Corporation, an Indiana corporation, hereinafter referred to as Associates, and Ellis Burnett, d/b/a Burnett Used Cars, a resident of the Eastern District of Missouri, hereinafter referred to as Burnett. There is diversity of citizenship between the parties and more than $10,000 is involved, so the court has jurisdiction under 28 U.S.C.A. § 1332.

Burnett was a used car dealer doing business in St. Louis, Missouri, during

the period involved, Auction was a wholesale dealer in used cars doing business in Chicago, Illinois, but making sales in other states as well as Illinois, and Associates was a finance company doing business in Missouri.

The first amended petition was in four counts, Count 1 pertaining only to the defendant Associates, and Counts 2, 3 and 4 pertaining only to the defendant Burnett. The suit involves dealings between the parties in which Auction sold and delivered cars to Burnett, who in turn mortgaged them, and others to Associates. Burnett became insolvent and Associates foreclosed the mortgages on some 13 cars involved in Count 1, and sold the cars in question.

■ Dealing first with the plaintiff's cause of action against Associates, Count 1 primarily states a cause of action in replevin against Associates, but an action in replevin will not lie in this instance against Associates, since the 13 cars had been sold prior to the institution of this suit and were not in Associates' possession at the time the suit was instituted. To maintain a replevin suit it is essential that actual and constructive possession of the property be in the defendant at the time the suit is instituted. Exman v. Wommack, Mo.App., 240 S.W.2d 718. While the first count would appear to be in replevin, under the liberality of the Federal Rules of Civil Procedure the first count states sufficient facts for the court to construe the complaint in Count 1 as being one for conversion.

The testimony regarding the 13 cars indicates that they fall roughly into two categories, the first category being cars in the possession of Burnett which he had mortgaged to Associates, and to which he held a certificate of title. Cars 1 to 7 were in this category, 4 of the cars having been originally purchased from Auction by Burnett and the other 3 purchased by him elsewhere. The mortgages were properly filed and the plaintiff in its original brief abandons its claim to Cars 2 to 7. The details as to Car 1 will be discussed later.

In the second category are Cars 8 to 13, which were in the possession of Burnett, had been purchased by him from Auction and mortgaged to Associates, but as to these 5 cars Burnett did not have in his possession any certificate of title. The mortgages were properly filed. On Cars 8 to 13, it is necessary to consider in detail the testimony with respect to the dealings between the parties. The testimony indicates the transactions between Auction and Burnett were consummated in the following manner: Auction would sell and deliver possession of the cars to Burnett in Illinois. Burnett then transported the cars to St. Louis. After this, Auction would place the title certificate in a draft envelope and send it through the usual banking channels. If Burnett did not make payment on the draft, the envelope with the title certificate would be returned to Auction. Auction used two types of draft envelopes. The yellow envelopes are called cash drafts (used with respect to Cars 8, 9, 11, 12 and 13). On the date of the yellow draft the transaction is entered upon the books of Auction as a cash sale. The blue envelopes were collection drafts (used with respect to Car 10).

Auction kept the records of these transactions in a "police book" (Exhibit 25), as required by the laws of Illinois. The "police book" as to each of these transactions is carried on a page styled "Sold", and among other information shows "selling price" and "to whom sold or delivered."

When the cars were brought to St. Louis, they were "floor planned." In other words, they were mortgaged to Associates. The evidence establishes a prior course of dealing in this manner, prior to the insolvency of Burnett.

Illinois and Missouri both have motor vehicle registration statutes (S.H.A. ch. 95½, § 3–101 et seq., V.A.M.S. § 301.010 et seq.). However, the two states have interpreted their statutes differently. Illinois interprets the statute as being directory. Thus, a valid transfer of title to an automobile can be made in Illinois without delivery of a certificate of title.

Commercial Credit Corp. v. Horan, 325 Ill.App. 625, 60 N.E.2d 763. Missouri, however, takes the position that the provisions of the act are mandatory, and that a valid transfer of title cannot be made unless a title certificate is delivered. Craig v. Rueseler, Mo.App., 159 S.W.2d 374 (Mo.) and Lebcowitz v. Simms, 300 S.W.2d 827 (Mo.App.).

■ According to well established principles of conflicts of law, if a person has lawful title to a chattel, his title will be recognized in another state. Restatement Conflicts of Law, Section 260, Robertson v. Staed, 135 Mo. 135, 36 S.W. 610, 33 L.R.A. 203. Thus, if Burnett had lawful title to the cars in Illinois, he had title in Missouri, and, therefore, he could lawfully mortgage the car to Associates. Title to a chattel passes in accordance with the intention of the parties. Illinois Revised Statutes, Chapter 121½, Section 18.

It is thus necessary for the court to ascertain the intent of Auction and Burnett in this regard. This task is made more difficult owing to the fact that Burnett was not present at the trial. However, the testimony indicates that the parties intended title to pass in Illinois. It was there that possession was delivered to Burnett. Furthermore, in each instance Auction entered the transaction as a sale in the "police book." In addition, if one indulges in the statutory presumptions of the Uniform Sales Act, which is effective in Illinois, title passed in Illinois.

Illinois Revised Statutes, Chapter 121½, Section 19, Rule 4(2), provides:

"Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract. * * * This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving the delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents."

■ The testimony indicates that the parties contemplated that Burnett have the authority to sell or mortgage any cars in his possession. Auction knew that Burnett "floor planned" his cars with Associates. It does not seem reasonable that Auction would intend that Burnett could not sell a car unless it were paid for. If this were Auction's intention, why was possession delivered before payment? The retention of the certificate of title could have no effect, since as indicated, supra, it is not considered necessary to pass title in Illinois. In any event, plaintiff failed to satisfy his burden of proving that title passed in Missouri. Burnett obtained title to the cars in Illinois, his title is recognized in Missouri, and he could, therefore, validly mortgage the cars to Associates, and Auction's claim as to Cars 8 to 13 must fail.

Associates validly recorded and otherwise perfected its mortgages as to Cars 8 to 13. Auction, however, raises the issue of estoppel on the theory that in disregard of his instructions, Associates' agent failed to check into Burnett's title to these cars. Since this court has found that Burnett did have title, Auction could not have been injured by the agent's conduct.

■ As to Car 1, Burnett had possession of the certificate of title. Auction claims to have regained title as a purchaser. Furthermore, Associates' mortgage on the car was improperly recorded. Thus, the question is whether an unrecorded mortgage takes precedence over a subsequent sale, where the buyer and mortgagee both left the car in the possession of the mortgagor-seller. Under these circumstances, it is clear that the party who obtains possession of the chattel first, perfects his interest. Personal Finance Co. of Mo. v. Lewis Investment Co., 138 S.W.2d 655 (Mo.App.). Furthermore, it has been indicated that

title to the car could not be transferred in Missouri without a Missouri certificate of title, and Auction had no Missouri certificate. Thus, Auction could not obtain title by virtue of the purported sale in Missouri and the fact that it had the Illinois certificate of title is immaterial.

With respect to Counts 2, 3 and 4 of Auction's amended complaint, Count 2 charges the defendant Burnett with wrongfully and unlawfully converting to his own use the 13 cars described in Count 1, and seeks judgment therefor against Burnett; Count 3 deals with the conversion of five additional cars to which we will refer as Cars 14 to 18, inclusive; and Count 4 charges Burnett with attempting to defraud plaintiff and seeks exemplary and punitive damages. The obvious purpose of these three counts is to prevent the discharge of the obligation in Burnett's bankruptcy.

With respect to Count 1 the court has held that Burnett had title to the 13 cars in question, thus he cannot convert a chattel which already belongs to him, and as to Count 2 the plaintiff Auction cannot recover in conversion since it is only a general creditor.

The facts with respect to Cars 14 to 18 are for all practical purposes the same as the facts with respect to Cars 8 to 13, except that the cars were not mortgaged to Associates and were not in the possession of Burnett at the time of the suit. As set out above, the title to Cars 8 to 13 passed from Auction to Burnett, and the same is true of Cars 14 to 18, since it was in essence with respect to the sale by Auction to Burnett of Cars 14 to 18 the same type of transaction as Cars 8 to 13. Since Burnett obtained title to Cars 14 to 18, he cannot convert them, and as to these cars under Count 3 Auction is not entitled to a judgment for conversion, but can only be a general creditor.

Count 4 is a very generally stated allegation, only alleging that the "defendant, Ellis Burnett, d/b/a Burnett Used Cars, did knowingly and intention-

ally attempt to defraud the plaintiff and should be caused to pay exemplary or punitive damages." With respect to the various cars sold by Auction to Burnett, there is no evidence of any fraud. In the instances where the cars were not paid for, namely Cars 8 to 18, inclusive, the drafts were drawn by Auction, not Burnett, and the entire history of the dealings between the parties would indicate a general creditor situation. Auction knew long in advance of these transactions that Burnett was "floor planning" the cars he purchased. At the time the transactions arose Burnett was indebted to Auction for a considerable amount of money for past sales of cars. The only potential basis for any fraud would be the dealings between Burnett and Auction with respect to Cars 1 to 7, which were purportedly sold by Burnett to Auction. 3 of these cars had been purchased originally from other than Auction. However, it is well settled that a misrepresentation as to questions of law is not fraud. Restatement Contracts, Sec. 474. And title is a question of law. Furthermore, even if such misrepresentations were a basis for fraud, in Bank of Kennett v. Clayton, 241 Mo.App. 487, 245 S.W.2d 678, the court indicates that a person has no right to rely on representations made by the seller as to titles.

Auction was experienced in transactions in automobiles and was well aware of the Missouri recording acts and thus should not have relied on such representations. The Missouri law, supra, requires the delivery of a title certificate for a valid transfer of title, and Auction did not receive such from Burnett. As a matter of fact, Burnett was in the hospital at the time of the alleged transaction, and according to Jack Clark, one of Auction's employees, his conversation with Burnett was over the telephone, and Burnett said that he had some cars which were not "floor planned" which Clark could take, and he further indicated to Clark that he could work the matter out with Jack Burnett, a brother of defendant Burnett, who was at the lot. There was no specific reference to Cars

1 to 7. Clark does not even remember as to just when he received the titles to Cars 1 to 7. He stated that he did not check the records to see if there were any liens on the cars for which the certificates were given to him. Such testimony will not support the recovery of Auction for a judgment based upon fraud.

The court will accordingly find against the plaintiff on Counts 2, 3 and 4 as to defendant, Ellis Burnett, d/b/a Burnett Used Cars.

This memorandum opinion will be adopted by the court as its findings of fact, conclusions of law and judgment, and the clerk will prepare a judgment finding against Auction and in favor of Associates Discount Corporation on Count 1, and against Auction and in favor of Ellis Burnett, d/b/a Burnett Used Cars on Counts 2, 3 and 4.